**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3324-17T2

DELAWARE RIVER PORT
AUTHORITY,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

FRATERNAL ORDER OF POLICE
PENN-JERSEY LODGE NO. 30
IN THE MATTER OF LAURA
BOUCHER,

    Defendant-Respondent/
    Cross-Appellant.

_____

Argued March 5, 2019 – Decided March 27, 2019

Before Judges Fisher, Hoffman and Geiger.

On appeal from Superior Court of New Jersey, Chancery Division, Camden County, Docket No. C-000087-17.

William F. Cook argued the cause for appellant/cross-respondent (Brown & Connery LLP, attorneys; William F. Cook, of counsel and on the briefs).

Charles T. Joyce argued the cause for respondent/cross-appellant (Spear Wilderman, PC, attorneys; Charles T. Joyce, of counsel and on the briefs).

PER CURIAM

The Delaware River Port Authority (DRPA) appeals from a Chancery Division order confirming an arbitration award in favor of DRPA police officer Laura Boucher, a member of the Fraternal Order of Police Penn-Jersey Lodge No. 30 (FOP), the union representing police officers employed by the DRPA. The FOP cross-appeals from the denial of its application for an award of attorney's fees and costs incurred in the Chancery action. We affirm.

I.

Boucher began working for the DRPA as a Public Safety Dispatcher in November 2012. While serving in this role, Boucher became pregnant with her first child. She experienced an uncomplicated pregnancy and continued to work as a dispatcher until about a week before her due date.

The DRPA hired Boucher as a police officer in 2014. After completing the academy, she was assigned to the Transit Unit, to work the 6:00 p.m. to 6:00 a.m. night shift. In the summer of 2015, Boucher became pregnant with her second child. This time Boucher's pregnancy was marked by "severe morning

sickness and severe fatigue." Boucher's OB/GYN advised her to request a modified duty position from her employer in the interest of a healthy pregnancy.

On September 1, 2015, Boucher sent an email to Leila Camp, a DRPA claims assistant, stating she was pregnant and due in April 2016. Boucher further stated she planned to obtain a doctor's note for light duty at an upcoming appointment. Boucher asserted she would need leave in the next year under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 to 2654. Boucher asked about the process for formally requesting light duty, including any specific requirements and forms to be completed by her physician. Camp provided the FMLA paperwork, which Boucher completed and timely submitted to Brenda Greene, a DRPA claims administrator. Boucher informed Greene she notified administration of her pending request for light duty.

The following day, Lt. Robert Finnegan emailed Boucher about meeting with Chief John Stief concerning her request for light duty and medical leave. Finnegan instructed Boucher to submit any required paperwork to Greene. Finnegan invited Boucher to contact him with any questions.

The meeting with Stief took place on September 14, 2015. Finnegan also attended the meeting. Boucher informed Stief of her pregnancy complications and attendant request for light duty. Stief told Boucher her request was denied

3

because no light duty was available. When Boucher inquired about a vacancy listed for a position in Central Records, Stief told her an employee in another title was filling that position.

Stief advised Greene no suitable temporary assignments were available to accommodate Boucher's light duty restrictions. In a letter to Boucher, Greene confirmed Boucher would need a modified duty assignment to return to work based on the restrictions stated in Boucher's FMLA certification and the physical requirements of her position. Greene informed Boucher there were no modified duty assignments available within the police department or throughout the Authority "that would suit your current physical restrictions."

Boucher was subsequently advised of her eligibility for short-term disability benefits through DRPA's disability carrier, The Standard. Boucher's application for short-term disability benefits was approved after she submitted additional medical records. Boucher used accrued paid leave to cover the two-week waiting period not covered by the disability benefits.

In late December 2015, Boucher received a letter from Camp confirming Boucher's FMLA leave became effective September 5, 2015, and expired twelve

weeks later on November 27, 2015.[1]  The letter also supplied Boucher with Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 to 12213, forms to be submitted by January 8, 2016.  Because Boucher's next doctor's appointment was not until the last week of January, FOP Secretary Tim Hoagland emailed Greene, objecting to the requirements imposed by the DRPA, including the application deadline.

In February 2016, The Standard denied long-term disability benefits and reversed the grant of short-term disability benefits because Boucher's medical records did not establish an inability to perform her job functions as of September 4, 2015, the date she stopped working.  Boucher appealed the decision and received short and long-term disability benefits during the course of the subsequent grievance and arbitration proceedings.

Boucher's second child was born on April 8, 2016.  She returned to work on June 8, 2016, without restrictions.

The DRPA and the FOP are parties to a collective bargaining agreement (CBA).  Article II, Section 6 of the CBA provides:

> The DRPA and FOP agree that no action will be taken for the purpose of discriminating against any Employee because of union membership or activities,

---

[1]  Boucher would become eligible for more FMLA hours after September 5, 2016, and after she worked at least 1250 hours preceding the leave.

A-3324-17T2

race, color, creed, age, sex, national origin, marital status, political affiliation or activity, or non[-]job-related disability, except where sex or age is a bona fide occupational qualification.

Article XIX provides:

The DRPA will place any non-work related temporarily disabled Employees able to do so on light or limited duty status within the Department of Public Safety to the extent that such duty is determined to be available in DRPA's sole discretion, even if on an intermittent basis. This provision shall also apply to those Employees temporarily partially disabled due to injury on the job before they have fully recovered, if approved by a physician. The DRPA will make a reasonable attempt to place the temporarily partially-disabled Employee on the same work schedule currently assigned to that Patrol officer.

In turn, Article XXXIII states: "In addition to the rights contained in this Agreement, this Agreement incorporates any and all rights available under applicable federal or state laws, including but not limited to the Americans with Disabilities Act and the Family and Medical Leave Act."

The FOP filed a grievance on behalf of Boucher after the DRPA denied her request for light duty to accommodate complications that arose during her pregnancy. The grievance did not resolve and was referred to the American Arbitration Association for binding arbitration pursuant to the CBA. The parties stipulated to the following statement of the issue: "Was DRPA required to

6                                                                    A-3324-17T2

provide light duty and/or reasonably accommodate Officer Boucher under Articles 2 and/or 19 of the CBA, and if so, what shall the remedy be?" The arbitrator conducted a three-day hearing. Boucher and FOP President Charles Price testified for the FOP; Greene and Stief testified for the DRPA.

Greene testified no request for light duty was granted to any DRPA police officer after 2013. Greene said the light duty position in the records room was filled by another full-time employee and there were no light duty positions in the past five years. Additionally, light duty positions in the radio room were no longer available to police officers because dispatcher positions were now in a different bargaining unit represented by another union.

Greene stated her responsibility to accommodate a DRPA police officer is limited to ascertaining if a suitable position is available in that department, because if not, no accommodation is possible. Greene did not contact Boucher to ask her what responsibilities and job tasks she was able to perform. Greene acknowledged that to the best of her recollection, no previous request for light duty by a pregnant officer had been denied. Greene said she was unaware of any police officer being assigned to light duty in a position outside the Department of Public Safety.

A-3324-17T2

Greene recalled an instance where a police officer was placed on desk duty because his duty weapon was taken away as a result of a domestic violence complaint. The officer was not permitted to drive a police vehicle or perform other police work. He was given an alternate duty assignment of cleaning up a storage room until he could resume police work.

Boucher testified she expected to receive light duty based on her conversations with three other female officers who had received light duty while pregnant. Boucher's OB/GYN informed her that working the 6 p.m. to 6 a.m. shift disrupted her normal sleep rhythms and "most likely" exacerbated her fatigue and morning sickness. Boucher testified she assumed she would be working the same shift as administration if she were assigned to light duty. Had the DRPA offered her light duty during the night hours, she would have consulted her physician to determine if the accommodation was advisable. Boucher did not believe she could be "picky" regarding shift assignment on light duty, and "would have been open to some sort of cooperative agreement as to where [she] would have been available to work and where they felt work needed to be done."

Boucher further testified the DRPA never offered a dispatcher assignment "or anything like that." Had such an offer been made, she "would have

considered it" and "talked to whoever offered [her] that position and figured out a way to try to make it work." In that regard, Boucher stated:

> When I requested light duty, it was purely for the fact that I wanted to work. I didn't want to sit at home. I didn't want to be on disability. I wanted to be able to continue to be active in the Police Department or with the Authority. There were a lot of things I missed out on being on disability. I would have done whatever I could have to continue to work.

Stief testified that light duty in the radio room is no longer available because dispatchers are represented by a separate union. He explained light duty is no longer available in central records because documents are processed electronically rather than manually. Additionally, since 2014, the DRPA has employed a media person to handle requests for video records, making that work unavailable for light duty.

Stief estimated, at any given time, between six and nine officers are out on workers' compensation leave, but no officer has been assigned desk duty or light duty since the beginning of 2014. As to the vacant administrative secretary position, Stief said that work was being performed by another secretary, thereby allowing the DRPA to hire another police officer.

The FOP argued the DRPA violated the ADA and its own policies by not determining whether a suitable position outside the Department of Public Safety

was available for Boucher to fill during her pregnancy. The FOP pointed to the DRPA's Worker's Compensation Modified/Alternate Duty Return to Work Program, which committed the DRPA to "make every effort" to place disabled workers in full pay employment status, even if it required finding "suitable work in another department within the Authority." The DRPA also averred the DRPA's "sole discretion" regarding light duty assignments must be read together with the other terms of the CBA, including Article II, Section 6 and Article XXXIII, which require compliance with the ADA.

The DRPA contended no officers on disability or workers' compensation leave have been placed on desk duty after January 1, 2014. It argued the desk duty of the officer facing domestic violence charges occurred more than two years before Boucher's leave in September 2015. The DRPA also claimed Article XIX applies only to positions within the Department of Public Safety. The DRPA emphasized no light duty positions were available during Boucher's pregnancy. The DRPA further argued the arbitration was limited to whether it violated Articles II or XIX of the CBA.

In her written opinion and award, the arbitrator found Article XIX granted the DRPA sole discretion to determine whether light duty assignments were available. Still, she reasoned:

DRPA cannot exercise its discretion under Article XIX in a vacuum, but must do so in concert with the [CBA] as a whole. A contract interpretation that includes the Agreement as a whole is preferred to an interpretation that considers a provision in isolation. The FOP argues that Articles XIX and II, Section 6 are read in the context of the Agreement as a whole, including Article XXXIII, Officer Boucher's request for light duty as an accommodation during her pregnancy must take into account her rights under the [ADA] including the 2008 amendments (ADAAA). Article XXXIII which specifically incorporates the rights available under the ADA into the Agreement.

. . . .

The amendments to the ADA, in the ADAAA of 2008, specifically include "pregnancy-related impairments" in the definition of a disability. EEOC Enforcement Guidance: Pregnancy Discrimination and Related Issues No. 915.003 (June 25, 2015). Given that Officer Boucher sought a reasonable accommodation pursuant to the ADAAA, the DRPA is obligated both by statute and Articles II and XXXIII of its [CBA], which incorporate protections against discrimination and requires compliance with the ADAAA of 2008, to consider that request by engaging in an "interactive process" to determine what accommodation, if any, should be provided. That process requires communication between the employer and the employee to determine whether a reasonable accommodation of the employee is possible without causing undue hardship on the employer. In this instance, the DRPA unilaterally determined that no accommodation was possible without engaging in the "interactive process" required by the ADA. Warner v. WM. Bolthouse [Farms Inc., No. 1:17-cv-00217, 2017 U.S. Dist. LEXIS 23172, at *6 (E.D. Cal. Feb. 17, 2017)

11

(citing <u>United States EEOC v. UPS Supply Chain Solutions</u>, 620 F.3d 1103 (9th Cir. 2010))]. That is, neither Chief Stief nor Ms. Greene inquired as to what tasks Officer Boucher could perform or what shifts she could work. Ms. Greene inquired only whether Chief Stief had light duty available within the Department of Public Safety and viewed a list of open positions on the DRPA website. While those actions are appropriate, without some discussion with Officer Boucher, they are not sufficient to constitute an "interactive process" and to determine whether a reasonable accommodation is available.

. . . The record in this instance does not reflect that DRPA engaged in discriminatory conduct based upon Office[r] Boucher's pregnancy, but it does reflect that she was summarily denied light duty without any effort to determine whether she could be accommodated.

Even given Chief Stief's testimony that no light duty was available within the Department of Public Safety, it is possible that Officer Boucher could have been accommodated on an intermittent basis, had that option been discussed. Article XIX provides that light duty might be available on an intermittent basis. Police officers were assigned to work as dispatchers, despite the dispatchers' representation by a different union, when the Department of Public Safety experienced a shortage of dispatchers during the papal visit in 2015. However, only active duty police officers were assigned as dispatchers. Officer Boucher had previously worked as a dispatcher. Had a full interactive process occurred, perhaps some light duty might have been available to Officer Boucher during periods when there was a shortage of dispatchers. I note that the "interactive process" may not always result in a light duty accommodation to a pregnant

police officer, pursuant to Article XIX, but that determination remains dependent on DRPA's engaging in the interactive process before exercising its discretion under Article XIX.

The FOP also argues that DRPA was obligated by its then new Worker's Compensation Modified/Alternative Duty Return to Work Program, together with the ADA to "make every effort" to place Officer Boucher in a fulltime position including making the effort to find "suitable work in another department…" The EEOC's Enforcement Guidance: Worker's Compensation and the ADA, EEOC Notice No. 915.002, does require employers that reserve light duty positions for employees with occupational injuries to extend the same opportunities to workers with disabilities covered by the ADA. In this instance, Ms. Greene reviewed the listing of job postings within the DRPA to determine whether there was one where Officer Boucher could work for the duration of her pregnancy. That review would have been sufficient in this instance had the DRPA engaged in the interactive process with Officer Boucher to determine her skills and limitations.

The arbitrator determined the DRPA violated Article XIX "when it failed to engage in an interactive process to properly determine whether Office[r] Boucher could be reasonably accommodated as required by the ADA before it exercised its discretion to deny her request for light duty to accommodate her pregnancy." The arbitrator awarded Boucher the "difference between the amount she received in long and short term disability payments from September

13

14, 2015 . . . through April 1, 2016, the point when she would have left work for the delivery of her child."

The DRPA brought this Chancery Division action to vacate the award pursuant to N.J.S.A. 2A:24-7. The FOP answered and counterclaimed to confirm the award and for attorney's fees and costs pursuant to N.J.S.A. 2A:15-59.1. The parties agreed to resolution of the matter through cross-motions for summary judgment without conducting discovery.

In an oral decision, the Chancery judge assessed the propriety of the award under the four categories enumerated in N.J.S.A. 2A:24-8. Specifically, the judge considered whether the arbitrator exceeded her authority by imposing a monetary award, which the DRPA labelled a sanction. The trial court concluded the arbitrator did not exceed her powers, finding the monetary award was compensatory, rather than punitive, and had an objective basis and rationale. The judge noted "the arbitrator heard the testimony and reached the final conclusion that the DRPA did not engage in an interactive process to determine what accommodations could be made available to this officer." The judge declined "to challenge" the arbitrator's factual findings. The judge concurred with the arbitrator's conclusion that the DRPA did not fulfil its obligation to engage in an interactive process.

The trial court also considered the FOP's application for attorney's fees and costs as a sanction based on the DRPA routinely seeking judicial review of binding public sector arbitration awards. The trial court declined to consider prior cases filed by the DRPA, and based its ruling on the facts presented in this matter. The court concluded the DRPA had the right to challenge the award and the decision to do so was not arbitrary.

The trial court confirmed the arbitration award and denied the FOP's application for attorney's fees and costs. Orders reflecting those rulings were entered. This appeal and cross-appeal followed.

The DRPA argues the award must be reversed because the Arbitrator misapplied the law in ruling that the DRPA violated the ADA without a finding of discrimination against Boucher. The CBA granted the DRPA sole discretion in determining the availability of light duty assignments. An interactive process analysis under the ADA is irrelevant where an employee cannot identify any positions suitable to constitute a reasonable accommodation. The damage remedy is improper under the ADA because 42 U.S.C. § 1981a(b)(2) excludes back pay from available compensatory damages. Finally, the DRPA asserts frivolous litigation sanctions are improper here.

In response, the FOP argues the award should be confirmed since it is reasonably debatable, consistent with the CBA binding both parties, and not susceptible to the statutory bases for judicial vacatur of a labor arbitration award. On its cross-appeal, the FOP avers the DRPA routinely challenges arbitration awards that are supposed to be final and binding, and that only monetary sanctions for frivolous litigation will dissuade them. The FOP argues the DRPA filed this action to vacate the arbitration award without justification or a reasonable chance to prevail, entitling the FOP to an award of attorney's fees and costs in the Chancery action.

## II.

Our role "in reviewing arbitration awards is extremely limited." State v. Int'l Fed'n of Prof'l & Tech. Eng'rs, Local 195, 169 N.J. 505, 513 (2001) (citing Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 221 (1979)). Arbitration awards are presumed to be valid. Local No. 153, Office & Prof'l Emps. Int'l Union v. Trust Co. of N.J., 105 N.J. 442, 448 (1987). Accordingly, we undertake "an extremely deferential review when a party to a collective bargaining agreement has sought to vacate an arbitrator's award." Policemen's Benevolent Ass'n, Local No. 11 v. City of Trenton, 205 N.J. 422, 428 (2011). "Generally, when a court reviews an arbitration award, it does so mindful of the

16

fact that the arbitrator's interpretation of the contract controls." Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013).

"An appellate court's review of an arbitrator's interpretation is confined to determining whether the interpretation of the contractual language is 'reasonably debatable.'" N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union, 187 N.J. 546, 553-54 (2006) (quoting Local 195, 169 N.J. at 513). "Under the 'reasonably debatable standard,' a court reviewing [a public-sector] arbitration award 'may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position.'" Borough of E. Rutherford, 213 N.J. at 201-02 (alteration in original) (quoting Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 11 (2007)). If the "interpretation of the contractual language" is "reasonably debatable in the minds of ordinary laymen," then "the reviewing court is bound by the arbitrator's decision." Selected Risks Ins. Co. v. Allstate Ins. Co., 179 N.J. Super. 444, 451 (App. Div. 1981) (quoting Ukrainian Nat'l Urban Renewal Corp. v. Joseph L. Muscarelle, Inc., 151 N.J. Super. 386, 398 (App. Div. 1977)).

Consistent with these principles, the New Jersey Arbitration Act, N.J.S.A. 2A:24-1 to -11, provides only four grounds for vacating an arbitration award:

> a. Where the award was procured by corruption, fraud or undue means;

17

b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;

c. Where the arbitrators were guilty of misconduct . . . prejudicial to the rights of any party; [or]

d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

[N.J.S.A. 2A:24-8.]

A court may also vacate an award if it is contrary to public policy. Borough of E. Rutherford, 213 N.J. at 202 (quoting Middletown Twp., 193 N.J. at 11).

An arbitrator's "'acknowledged mistake of fact or law or a mistake that is apparent on the face of the record'" is captured within 'undue means,' "whereas an arbitrator exceeds his or her 'authority by disregarding the terms of the parties' agreement.'" Borough of E. Rutherford, 213 N.J. at 203 (quoting Off. of Emp. Rels. v. Commc'ns Workers of Am., 154 N.J. 98, 111-12 (1998)). Whether the arbitrator exceeded his authority "entails a two-part inquiry: (1) whether the agreement authorized the award, and (2) whether the arbitrator's action is consistent with applicable law." Id. at 212.

The party seeking to vacate an arbitration award bears the burden of demonstrating wrongdoing on the part of the arbitrator. Tretina Printing, Inc. v. Fitzpatrick & Assocs., 135 N.J. 349, 357 (1994); Minkowitz v. Israeli, 433 N.J.

Super. 111, 136 (App. Div. 2013). Because a decision to vacate or confirm an arbitration award is a decision of law, we review "the denial of a motion to vacate an arbitration award de novo." Minkowitz, 433 N.J. Super. at 136 (quoting Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010)).

We discern no basis to vacate the arbitrator's award under the statute. We reject the DRPA's position that the arbitrator misinterpreted the ADA or the CBA, or exceeded her authority.

The DRPA cites several federal cases for the proposition that an interactive process analysis is irrelevant where an employee cannot identify any positions suitable to constitute a reasonable accommodation. Specifically, DRPA directs our attention to Donahue v. Consolidated Rail Corp., where the Third Circuit Court of Appeals recited "the Eleventh Circuit's observation that 'where a plaintiff cannot demonstrate "reasonable accommodation," the employer's lack of investigation into reasonable accommodation is unimportant.'" 224 F.3d 226, 233 (3d Cir. 2000) (quoting Willis v. Conopco, Inc., 108 F.3d 282, 285 (11th Cir. 1997)). Donahue goes on to clarify, however: "an employer who acts in bad faith in the interactive process will be liable if the jury can reasonably conclude that the employee would have been able to perform the job with accommodations." Id. at 234-35 (quoting Taylor v. Phoenixville

Sch. Dist., 184 F.3d 296, 317 (3d Cir. 1999)) (emphasis in original). Therefore, the DRPA's reliance on Donahue is misplaced because the arbitrator, as the finder of fact, reasonably concluded Boucher would have been able to perform her duties with accommodations.

We find the proffered language in Donahue does not control this case for the following, additional reasons. First, although "elements of a claim under § 504(a)[2] of the Rehabilitation Act[3] are very similar to the elements of a claim under Title I of the Americans with Disabilities Act," id. at 229, the fact remains that Donahue was not an ADA case, but was a failure-to-transfer case under the Rehabilitation Act.

Furthermore, in acknowledging the similarities between the two acts, the Donahue court cited to Taylor for the elements of a claim under the ADA. Donahue, 224 F.3d at 229. In Taylor, the court detailed the elements a disabled employee must demonstrate to show an employer failed to engage in the interactive process as follows:

> 1) the employer knew about the employee's disability;
> 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in

---

[2]  29 U.S.C. § 794.

[3]  The Rehabilitation Act of 1973, 29 U.S.C. §§ 701 to -796l.

seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

[184 F.3d at 319-20.]

With regard to the element of employer good faith, the Taylor court explained summary judgment is typically precluded where there is a genuine dispute about the employer's good faith because such a determination is properly accorded to the trier of fact. Id. at 318. Therefore, under Taylor, a determination that an employer failed to make a good faith effort in the interactive process is not legal, but factual in nature. See also Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 772 (3d Cir. 2004) (recognizing the function of the fact finder includes determinations of good faith in the interactive process).

The arbitrator's factual findings are supported by the record. Her interpretation of the contractual language is reasonably debatable. Change in shifts can be a reasonable accommodation. Colwell v. Rite Aid Corp., 602 F.3d 495, 505-06 (3d Cir. 2010). So too can light duty. By not engaging in an interactive process with Boucher to learn the services she could perform and whether she would be capable of working a different shift, the DRPA did not make a good faith effort to assist Boucher in seeking accommodations. Consequently, the DRPA did not engage in a good faith effort to reasonably

accommodate Boucher. Therefore, the DRPA has not met its burden of demonstrating wrongdoing on the part of the arbitrator. Accordingly, the award must be confirmed.

III.

We next address the denial of the FOP's application for an award of attorney's fees and costs. The FOP asserts the DRPA routinely challenges final and binding arbitration awards, and that only monetary sanctions for frivolous litigation will dissuade them. Relying on non-precedential federal case law, the FOP argues it was error to deny an award of attorney's fees and costs because the DRPA's action to vacate the supplemental award was without justification and had no reasonable chance of success. Ostensibly, the FOP claims the DRPA's appeal was frivolous. We are unpersuaded by this argument.

The arbitrator denied the FOP's application for an award of attorney's fees and costs. The record does not demonstrate the FOP complied with the notice requirements imposed by Rule 1:4-8(b)(1) for an award of fees and costs for frivolous litigation under N.J.S.A. 2A:15-59.1. Failure to comply with the notice requirements imposed by the rule bars an award of frivolous litigation fees and costs. Trocki Plastic Surgery Ctr. v. Bartkowski, 344 N.J. Super. 399, 406 (App. Div. 2001).

The trial court addressed the merits of the FOP's claim for frivolous litigation sanctions. It declined to speculate about prior actions filed by the DRPA to set aside arbitration awards, noting the facts involved in those prior actions were not before the court. Rather, the court assessed the facts and legal issues present in this case and concluded the DRPA had a right to challenge the award and the decision to do so was not arbitrary or frivolous. We discern no basis to overturn that decision. The issues raised by the DRPA regarding its duties under the ADA appear to be of first impression in this State. The DRPA also asserted it properly denied to accommodate Boucher by assigning her to light duty because no such light duty position was available. We do not view these positions to be without justification or reasonable chance to prevail, or otherwise frivolous.

The ADA is a fee-shifting statute that permits the award of reasonable counsel fees and costs to a prevailing party in any court action or administrative proceeding. 42 U.S.C. § 12205. The FOP argues the trial court should have awarded attorney's fees and costs in the Chancery Division action because it "essentially shared the status of 'prevailing party' with Officer Boucher." We are unpersuaded by this argument. The FOP did not assert a claim under the ADA for an award of attorney's fees and costs in its counterclaim or during oral

argument on its motion. We adhere to the well-settled principle that an issue or claim not presented to the trial court will not be considered on appeal. Zaman v. Felton, 219 N.J. 199, 226-27 (2014); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). We decline to address the FOP's claim for counsel fees and costs under the ADA.

The FOP's remaining arguments lack sufficient merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(1)(E). The FOP is not entitled to an award of attorney's fees under the terms of the CBA or any other court rule or statute. Therefore, the FOP must bear the cost of its own attorney's fees and costs in this matter. See R. 4:42-9(a); Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:42-9 (2019). The trial court properly denied the FOP's application for an award of attorney's fees and costs.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3324-17T2