935 A.2d 516

MIDDLETOWN TOWNSHIP PBA LOCAL 124, PLAINTIFF–
RESPONDENT, v. TOWNSHIP OF MIDDLETOWN,
DEFENDANT–APPELLANT.

MIDDLETOWN TOWNSHIP SUPERIOR OFFICERS ASSOCIATION,
PLAINTIFF–RESPONDENT, v. TOWNSHIP OF MIDDLETOWN,
DEFENDANT–APPELLANT.

Argued September 24, 2007—Decided December 3, 2007.

2

*Bernard M. Reilly* argued the cause for appellant (*Dowd & Reilly*, attorneys).

*Sidney H. Lehmann* argued the cause for respondent Middletown Township Superior Officers Association (*Szaferman, Lakind, Blumstein, Blader & Lehmann*, attorneys; *Mr. Lehmann and Robert F. Casey*, on the brief).

*David J. De Fillippo* argued the cause for respondent Middletown Township PBA Local 124 (*Klatsky, Sciarrabone & De Fillippo*, attorneys).

*Robert A. Fagella* argued the cause for amicus curiae, New Jersey State Policemen's Benevolent Association (*Zazzali, Fagella, Nowak, Kleinbaum & Friedman*, attorneys; *Mr. Fagella and Aileen M. O'Driscoll*, on the brief).

Justice LONG delivered the opinion of the Court.

## I

At issue in these consolidated appeals is the meaning of the following language in *N.J.S.A.* 40A:10–23, a statute authorizing the discretionary grant of health benefits to retirees:

> [t]he employer may, in its discretion, assume the entire cost of such coverage and pay all of the premiums for employees a. who have retired on a disability pension, or b. who have retired after 25 years or more of service credit in a State or locally administered retirement system and a period of service of up to 25 years with the employer at the time of retirement, such period of service to be determined by the employer and set forth in an ordinance or resolution as appropriate....
>
> [*N.J.S.A.* 40A:10–23.]

Here, the Township of Middletown challenges an arbitrator's award that declared it bound under its collective bargaining agreements (CBAs) to provide health benefits to all police retirees who had accrued twenty-five years of government service credits.

The Township's primary thrust is that *N.J.S.A.* 40A:10–23 requires a resolution or an ordinance to be enacted before a governing body may grant lifetime health coverage to retirees who have served less than twenty-five years with the municipality. Because no such authorizing ordinance or resolution was enacted, the Township argues that the arbitrator's award did not "follow the law" and should be vacated. The trial judge disagreed and confirmed the award and the Appellate Division affirmed.

*N.J.S.A.* 40A:10–23 grants municipalities discretion to assume the cost of a retiree's health benefits so long as the retiree has accrued the requisite twenty-five years of government service credit. Any combination of service and credit will pass muster; it is only where the municipality chooses to require a particular period of service within its borders that a resolution or ordinance is required. Accordingly, the arbitrator's award did not violate any law and was subject only to the "reasonably debatable" standard. Measured against that standard, the award was properly confirmed. We therefore affirm.

## II

In 2003, the Middletown Township Policemen's Benevolent Association Local 124(PBA) and the Middletown Police Superior Officers Association (SOA) filed grievances on behalf of Township Patrolmen Wayne Bradshaw and Anthony Gonzales, and Lieutenant Michael Mehler (the officers).[1] The grievances concerned the entitlements of the officers to receive paid retiree health benefits under their respective bargaining agreements.

All three qualified for "special retirement," which allows a police officer or firefighter who has accumulated twenty-five years of creditable service in the Police and Firemen's Retirement System

---

[1] The Township is party to separate collective bargaining agreements with both the PBA and SOA. The relevant Township/PBA agreement was effective January 1, 2000, through December 31, 2003, and the relevant Township/SOA agreement was effective January 1, 2000, through December 31, 2004.

(PFRS), to retire regardless of the number of years of employment that the officer may have had with any specific department and without consideration of his or her age. *N.J.S.A.* 43:16A–11.1.

Patrolman Gonzalez, who retired on January 1, 2004, had been employed by the Township for ten years, but had twenty-five years of credited service due to his prior employment as a police officer with other municipalities. Patrolman Bradshaw, who retired on September 1, 2003, had been employed by the Township for twenty years, but had twenty-five years of pension service credit on account of three years with the military and two years with the Department of Defense. *See N.J.S.A.* 43:16A–11.11 (authorizing PFRS members to purchase credit for public employment with other states or United States government). Lieutenant Mehler had been employed by the Township for twenty-two years, but had over twenty-six years of credited service due to prior public employment.

Upon announcing their intention to retire, the officers were advised that they were ineligible for health benefits because *N.J.S.A.* 40A:10–23 requires that an officer accrue twenty-five years of *actual* service with the municipality to be considered for discretionary retirement health benefits.[2]

The 2000–2003 PBA Agreement contained the following language:

> Pursuant to *N.J.S.A.* 40A:10–21 through 25, the employer agrees to pay for and provide such medical and health benefits as enumerated in sections A, B AND D of this Article to all employees who have retired.[3]

The SOA Agreement for 2000–2004, contained slightly different language with similar import:

---

[2] *Mehler chose not to retire after learning that he would not receive health benefits.*

[3] In both Agreements "Section A" refers to health insurance, "Section B" refers to health insurance coverage, and "Section D" refers to a two dollar prescription plan available to employees. Section D was not incorporated in previous Agreements.

Pursuant to the authority set forth in the appropriate laws of the State of New Jersey, the employer agrees to provide such benefits enumerated in section A, B, and D of this Article to all employees who have retired.

That language is nearly identical to the language in prior Agreements and dates back to 1979. Each Agreement was approved by the Township in a separate resolution and the SOA Agreement was also approved by ordinance.

The grievances were consolidated and proceeded to arbitration during May and June 2004. At the arbitration hearing, a number of witnesses testified including Bud Bradshaw, who served as Township Administrator in the 1970s. In 1981, Bradshaw was appointed permanent Township Administrator and continued in that capacity until his retirement in 1988. Bradshaw's testimony established that in the late 1970s the parties to the CBAs negotiated a paid retirement health benefit for all police officers who earned a PFRS retirement, regardless of years of actual service with the Township, and without awareness that the statute, at the time, required twenty-five years with the Township. After Bradshaw's retirement, paid retirement health insurance coverage continued to be included in the 1988–1990, 1991–1992, 1993–1995 and 1995–1999 PBA and SOA Agreements without a specific service requirement in the Township.[4]

Police Officer Lawrence Hall testified that before he was hired in 1986 he sought assurance that his six years of service with Asbury Park would be credited toward his eligibility for paid health benefits, and was told he would receive credit. Edward Dunn, who replaced Bradshaw as Township Administrator in 1988, testified that during his tenure the Township discovered that the PBA and SOA Agreements did not comply with *N.J.S.A.* 40A:10–23. As such, Dunn stated that he attempted to discontinue paid retiree health benefits to an officer with less than twenty-five

---

[4] Bud Bradshaw is Wayne Bradshaw's father. Acknowledging a potential or actual conflict of interest, the arbitrator chose to credit Bud Bradshaw's testimony only to the extent that his testimony was supported by other competent evidence.

years of service with the Township who had been receiving those benefits for a decade. As a result, litigation ensued. *See Middletown Policemen's Benev. v. Twp. of Middletown*, 162 *N.J.* 361, 744 *A.2d* 649 (2000) (holding Township equitably estopped from terminating officer's post-retirement health benefits).

On the basis of all of the evidence presented, the arbitrator concluded that it was the Township's practice to provide benefits to all retirees. In ruling, he compared the pre–1995 PBA and SOA Agreements with the Blue and White Collar bargaining unit Agreements, which specify that a retiree must have been employed *with the Township* for twenty-five years in order to receive benefits. He concluded that the Township's failure to negotiate similar language with the PBA and SOA undercut the Township's position. Further, because the Township had not produced any evidence demonstrating that it had refused to pay retiree health benefits to an officer with less than twenty-five years of actual service in the past, and that the operative language of the current Agreement was similar or identical to earlier iterations, the arbitrator found that all parties understood that the officers were entitled to receive paid health benefits in retirement.

Regarding the Township's argument that an ordinance or resolution had to be adopted under *N.J.S.A.* 40A:10–23 before it could provide benefits to retirees with less than twenty-five years of service, the arbitrator explained that the members of the governing body who ratified the PBA and SOA Agreements were compelled to do so under relevant labor law principles, and that once an agreement is ratified, the governing body cannot "refuse to honor such provisions by ducking behind the ordinance or resolution requirement[ ]." Finally, he determined that the governing body enacted resolutions or ordinances adopting each Agreement, and that those actions "satisfie[d] the public awareness purpose behind the ordinance or resolution" requirement of the statute.

In November 2004, the PBA and SOA filed verified complaints in the Chancery Division seeking confirmation of the award. The Township filed an answer and counterclaimed for vacation of that

portion of the award dealing with retiree health benefits. On February 7, 2005, the trial judge entered an order confirming the award in both cases.

The Township appealed and the Appellate Division affirmed in an unpublished *per curiam* opinion. The panel determined that the arbitrator's award "represented a reasonable interpretation of the contract language and satisfies the 'reasonably debatable' standard." Addressing whether the arbitrator's interpretation contravened *N.J.S.A.* 40A:10–23 because no separate ordinance or resolution had been adopted, the panel concluded that "where a statute does not expressly require action by ordinance or resolution the power may be exercised by either means," and that the Township's adoption of the Agreements by both an ordinance and a resolution satisfied *N.J.S.A.* 40A:10–23.

We granted the Township's petition for certification and permitted the New Jersey State PBA to participate as *amicus curiae*. 189 *N.J.* 648, 917 *A.*2d 788 (2007).

### III

The Township argues that the Appellate Division erred in applying the "reasonably debatable" standard because a reviewing court owes an arbitrator's award no special deference or weight where that award violates a statutory enactment; that *N.J.S.A.* 40A:10–23 prescribes an ordinance procedure before a municipality can grant lifetime health benefits to retirees with less than twenty-five years of actual service in the municipality; that the Agreements should be interpreted under the prior statute which required twenty-five years of actual service, because that statute "informed and defined" the original Agreement language in 1979 which remains essentially unchanged; and that ratification of the Agreements is insufficient to grant benefits to an expanded class of recipients.

The PBA maintains that the officers are legally entitled to retiree health benefits because no threshold for minimum years of service within the Township was ever contemplated or negotiated;

that *N.J.S.A.* 40A:10-23 requires the enactment of an ordinance or resolution only where a municipality intends to establish a minimum threshold of actual years of service within its borders; that other collective bargaining agreements entered into by the Township include actual years-of-service thresholds, thus evidencing the Township's understanding of the need to negotiate such language; and that it was the long-standing practice of the Township to award lifetime benefits to officers who retired with less than twenty-five years of actual service.

The SOA echoes the PBA arguments. In so doing, it underscores that the statute only requires an enactment to establish a service threshold and adds that the Township should not be permitted to benefit from its failure to enact an ordinance adopting a threshold. It also claims that the Township should be judicially estopped from contesting the meaning of the contractual provisions, as a result of positions it took in other litigations. On the basis of those arguments, the SOA asserts that the "reasonably debatable" standard was properly applied, and that the arbitrator's interpretation should be approved.

Amicus contends that the grounds on which an arbitrator's award may be vacated do not exist in this case; that the Agreement is devoid of any suggestion of a mandatory service floor within the municipality; and that no law or public policy of the state was violated by the Agreement. Accordingly, it concludes that the award was properly confirmed under the "reasonably debatable" standard.

## IV

Arbitration of labor-management disputes is favored in New Jersey. *Scotch Plains–Fanwood Bd. of Educ. v. Scotch Plains–Fanwood Educ. Ass'n*, 139 *N.J.* 141, 149, 651 *A.*2d 1018 (1995). Consequently, to ensure "finality, as well as to secure arbitration's speedy and inexpensive nature, there exists a strong preference for judicial confirmation of arbitration awards." *N.J. Tpk. Auth. v. Local 196*, 190 *N.J.* 283, 292, 920 *A.*2d 88 (2007)

(citations and internal quotation omitted). Specifically, in public sector arbitration, a court will confirm an arbitrator's award so long as the award is "reasonably debatable." *Ibid.; N.J. Transit Bus Operations v. Amalgamated Transit Union,* 187 *N.J.* 546, 548, 902 *A.*2d 209 (2006); *Kearny PBA Local No. 21 v. Town of Kearny,* 81 *N.J.* 208, 221, 405 *A.*2d 393 (1979). Under the "reasonably debatable" standard, a court reviewing an arbitration award "may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position." *New Jersey Transit Bus Operations, supra,* 187 *N.J.* at 554, 902 *A.*2d 209.

There are four statutorily-defined circumstances under which a court may vacate a labor arbitration award:

a. Where the award was procured by corruption, fraud or undue means;

b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;

c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;

d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

[*N.J.S.A.* 2A:24–8.]

In addition, we have held that a court "may vacate an award if it is contrary to existing law or public policy." *N.J. Tpk. Auth., supra,* 190 *N.J.* at 294, 920 *A.*2d 88 (citation and internal quotation omitted). "For purposes of judicial review of labor arbitration awards, public policy sufficient to vacate an award must be embodied in legislative enactments, administrative regulations, or legal precedents," and may not be "based on amorphous considerations of the common weal." *Id.* at 295, 920 *A.*2d 88. Moreover, the public policy exception is triggered when "a labor arbitration *award*—not the grievant's conduct—violates a clear mandate of public policy...." *Id.* at 300, 920 *A.*2d 88 (emphasis added).

Similarly, we have explained that "[i]n the context of public employment an arbitrator's determinations in binding arbitration

are subject to pertinent statutory criteria." *Kearny PBA, supra,* 81 *N.J.* at 217, 405 *A.*2d 393. Indeed, in interpreting an Agreement, "[p]arties are presumed to have contracted with reference to existing law," and such "principles are especially pertinent where ... the agreement was entered into pursuant to a specific authorizing statute." *Red Bank Bd. of Educ. v. Warrington,* 138 *N.J.Super.* 564, 568–69, 351 *A.*2d 778 (App.Div.1976).

V

In considering questions of statutory interpretation, the first step is to look at the plain meaning of the provision at issue. *State v. Hoffman,* 149 *N.J.* 564, 578, 695 *A.*2d 236 (1997); *State v. Szemple,* 135 *N.J.* 406, 421, 640 *A.*2d 817 (1994); *Merin v. Maglaki,* 126 *N.J.* 430, 434, 599 *A.*2d 1256 (1992); *Renz v. Pa. Cent. Corp.,* 87 *N.J.* 437, 440, 435 *A.*2d 540 (1981). "When engaging in this analysis, if the Legislature has not provided otherwise, words are to be given 'ordinary and well-understood meanings.'" *Alan J. Cornblatt, P.A. v. Barow,* 153 *N.J.* 218, 231, 708 *A.*2d 401 (1998) (quoting *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 383–84, 658 *A.*2d 1230 (1995)). When the statutory language is clear, "the court's sole function is to enforce the statute in accordance with those terms." *Phillips v. Curiale,* 128 *N.J.* 608, 618, 608 *A.*2d 895 (1992). A "court has no power to substitute its own idea of what a statute should provide in the face of clear and unambiguous statutory requirements." *Comm. to Recall v. Casagrande,* 304 *N.J.Super.* 496, 510, 701 *A.*2d 478 (Law Div.1997), *aff'd,* 304 *N.J.Super.* 421, 701 *A.*2d 439 (App.Div.1997); *see In re Municipal Election Held on May 10, 1994,* 139 *N.J.* 553, 559, 656 *A.*2d 5 (1995).

When a statute is "silent or ambiguous," however, the Court may look to extrinsic evidence, including legislative history. *Hoffman, supra,* 149 *N.J.* at 578, 695 *A.*2d 236 ("The primary task for the [C]ourt is to effectuate the legislative intent in light of the language used and the objects sought to be achieved.") (internal

quotation omitted); *Szemple, supra,* 135 *N.J.* at 422, 640 *A.*2d 817. That is the backdrop for our inquiry.

## VI

Prior to its amendment to its present form in 1995, *N.J.S.A.* 40A:10–23 provided:

> The employer may, in its discretion, assume the entire cost of such coverage and pay all of the premiums for employees who have retired on a disability pension or *after 25 years' or more service with the employer,* or have retired and reached the age of 62 or older with at least 15 years of service *with the employer,* including the premiums on their dependents, if any, under uniform conditions as the governing body of the local unit shall prescribe.
>
> [ (Emphasis added).]

On its face, the old statute expressed a clear legislative intention to require twenty-five years of service *with the employer* in order for the employer to grant discretionary health benefits to an employee who had not reached the age of sixty-two. Indeed, we said as much in *Middletown, supra,* 162 *N.J.* at 370, 744 *A.*2d 649. There, a Township police officer retired under the 1988–1990 PBA Agreement which provided:

> Pursuant to authority set forth in public laws 21 of Title 40 (Chapter 11) the employer agrees to provide such benefits enumerated in Sections A, B, and D of this Article to all employees who have retired.

The officer had been employed by the Township for twenty-two years, but purchased credit for his four years in the United States Navy under *N.J.S.A.* 43:16A–11.1. *Id.* at 370, 744 *A.*2d 649. Prior to his retirement, Township officials "repeatedly assured" the officer that he and his family would receive health benefits when he retired which, in fact, was the case for the next ten years. *Middletown, supra,* 162 *N.J.* at 365, 744 *A.*2d 649. The Township, through Dunn, discontinued the officer's health benefits after a Township resident successfully sued in Superior Court under the statute. The PBA and the officer appealed and the Appellate Division affirmed. We granted certification and reversed.

In a case that we characterized as one solely involving equitable estoppel, we held that because the PBA Agreement in effect at the time of the officer's retirement, "offered continued health benefits

'*to all employees who have retired,*' " it was *ultra vires* insofar as it provided benefits to retirees who had less than twenty-five years of service *with the Township,* in contravention of the pre–1995 *N.J.S.A.* 40A:10–23. *Id.* at 369–71, 744 *A.*2d 649. Although we ultimately concluded that the Township was equitably estopped from terminating the officer's health benefits, we were clear that the old statute required twenty-five years of service with the employer for retiree health benefits to be awarded.

In 1995, the statute was amended and now authorizes a municipality to pay health benefits to persons

a. who have retired on a disability pension, or b. who have retired after 25 years or more of service credit in a State or locally administered retirement system and a period of service of up to 25 years with the employer at the time of retirement, *such period of service to be determined by the employer and set forth in an ordinance or resolution as appropriate,* or c. who have retired and reached the age of 65 years or older with 25 years or more of service credit in a State or locally administered retirement system and a period of service of up to 25 years with the employer at the time of retirement, *such period of service to be determined by the employer and set forth in an ordinance or resolution as appropriate,* or d. who have retired and reached the age of 62 years or older with at least 15 years of service with the employer, including the premiums on their dependents, if any, under uniform conditions as the governing body of the local unit shall prescribe. The period of time a county law enforcement officer has been employed by any county or municipal police department, sheriff's department or county prosecutor's office, may be counted cumulative as "service with the employer" for the purpose of qualifying for payment of health insurance premiums by the county pursuant to this section.

[*N.J.S.A.* 40A:10–23 (emphasis added).]

When the amendment is compared to the earlier version of the law, it is evident that the Legislature eliminated the requirement of "a period of twenty-five years or more served *with the employer* " and replaced it with twenty-five years or more of service "credit" in a state or local retirement system, including some period with the employer at retirement.

On its face then, the amended statute empowers the Township to award health benefits to an expanded class of employees— officers who have accreted twenty-five years of service and credits in one or more of the relevant governmental employers including the Township. *N.J.S.A.* 43:16A–1(6). Indeed, the legislative his-

tory of the amendment removes doubt as to the meaning of the statute: "to broaden the categories of employees for whom a local government could choose to pay health benefits after retirement," including "employees who have aggregated sufficient service credits in one or more State or locally administered retirement systems." *Assembly Local Gov. Comm. Statement to Assembly Bill No. 2588, L.* 1995, *c.* 136 (Mar. 27, 1995). An earlier version of the bill did not contain a provision for the category at issue here, but only permitted an employer to pay benefits for retirees who had "reached the age of 65 or older with 25 years or more of service with the employer." *See Assembly Bill No. 2588, L.* 1995, *c.* 136 (Feb. 23, 1995). Those legislative pre-conditions were eliminated in the final version of the law. In fact, the parties do not dispute that interpretation of the Act.

It is in connection with the remaining language that they part company. The Township interprets the statute as requiring the enactment of an ordinance or resolution setting forth the required period of Township employment. Absent such an ordinance or resolution, the Township argues that the twenty-five years of service requirement is the default position.

That is neither a fair nor logical reading of the statute. To the contrary, and consistent with *N.J.S.A.* 43:16A–1 *et seq.* which sets forth the criteria for a special retirement, *N.J.S.A.* 40A:10–23 provides that an employee who is retired with *any* combination of service and credit will meet the twenty-five year threshold for discretionary health benefits. However, it empowers the municipality to set a minimum period of service of up to twenty-five years within its own jurisdiction, if it chooses. Nothing in the statute suggests that the broadening of the class of qualified retirees is inoperative in the absence of an ordinance or resolution.

Rather, the requirement of an ordinance or resolution is linked only to the establishment of a threshold. It is entirely up to the employer to decide what, if any, threshold should apply up to twenty-five years. The employer has absolute hegemony over the issue. However, where the employer chooses not to establish such

a floor, the statute is essentially self-executing; any combination of service and credit that totals twenty-five years will do. Indeed, the words used and the structure of the statute, including the reference back to "such period of service," underscore that the need for an ordinance or resolution is tethered to the exercise of the municipal option regarding a service threshold. In the absence of such an exercise, the statute provides that any combination of credits and service that totals twenty-five years will make an employee eligible for (although not entitled to) discretionary health benefits. The statute is thus fully operative without enactment of an ordinance or resolution.

In reaching our conclusion, we are mindful of the following language in *Middletown*, which we specifically declared to be dictum, and upon which the Township relies:

> Although it does not affect our decision that the Township is equitably estopped from denying Beaver his medical benefits, we comment briefly on Loigman's contention that the specified time period as required by *N.J.S.A.* 40A:10–23 was never adopted by "ordinance or resolution." Plaintiffs contend that when the Township Council formally ratified the collective bargaining agreement, it adopted the type of resolution required by the 1995 amendment. *N.J.S.A.* 40A:10–23 states that the period of service required under the statute be "set forth in an ordinance or resolution." *In our view, the 1995 amendment to the statute reflects the legislative intention to require an ordinance or resolution that specifically adopts N.J.S.A. 40A:10–23.*
>
> [*Middletown, supra*, 162 *N.J.* at 374, 744 A.2d 649 (emphasis added).]

Fairly read, that language, which underscores the dangers inherent in dictum, was meant only to comment on the PBA's contention that a post-agreement ratification of a CBA would automatically satisfy the statutory mandate of an ordinance. It did not purport to nor did it address the more nuanced issue before us which is to determine the particular circumstances under which an ordinance is required by *N.J.S.A.* 40A:10–23. Thus, it is of no moment to our analysis. In sum, there is nothing in *N.J.S.A.* 40A:10–23 that requires an ordinance or resolution in the circumstances here presented. Thus the Township's contention that the arbitrator's award must be vacated as "contrary to law" is unavailing.

## VII

██   We turn next to the Township's claim that the arbitrator failed to abide by the established interpretative principle that parties are presumed to have contracted with reference to existing law.   The gist of that argument is that when the first collective bargaining Agreement was negotiated in 1979, the relevant statute required that retirees have twenty-five years of actual service and that it was that law that "informed and defined" the clause in the Agreements.   Because the language in the current Agreements is essentially unchanged, the Township argues that it must derive its meaning from the earlier act.   We disagree.

In *Middletown*, we recognized that under the prior statute the Township was without power to authorize health benefits based, in part, on service credits because that statute required "twenty-five years or more service *with the employer*."   Thus, the Township's agreement to pay health benefits based on service and credits, as reflected in the collective bargaining agreement, was *ultra vires*. *Middletown, supra*, 162 *N.J.* at 369–71, 744 *A.2d* 649.

Thereafter, the statute was amended to its present form, fully legitimizing the award of retirement health benefits based on a combination of service and credits.   It was after that amendment, and with specific reference to it, that the PBA and SOA Agreements were re-negotiated.   Those new Agreements specifically authorized retirement health benefits and, as the arbitrator properly observed, must be interpreted in light of the new statute with which they fully conform.   It was the obligation of the Township to negotiate different language if it intended to limit those benefits.

## VIII

██   We turn finally to the application of the "reasonably debatable" standard to the arbitrator's conclusion that the Agreements provided health benefits for all retirees regardless of whether they worked for the Township for twenty-five years.

The arbitrator based his decision on the Township's history of negotiations with the unions, and what he determined to be the long-standing practice and understanding of the Township that the Agreements provided health benefits to all retirees, in contravention of the pre–1995 *N.J.S.A.* 43:10A–23 but in conformity with the present version of the Act.

In ruling, he considered all of the relevant testimony and documentary evidence including other collective bargaining agreements that specifically require employees to serve twenty-five years with the Township in order to obtain retirement health benefits. He made detailed findings rooted in that evidence and concluded:

> With the 1995 amendments intact, I find that the plain language of the current PBA and SOA Agreements fully supports the joint position of the PBA/SOA in this matter. Officers Bradshaw, Gonzalez and Mehler are, therefore, entitled to receive paid health benefits in retirement from the Township—because each officer effectively retired while in the employ of the Township . . .
>
> [T]he Township failed to produce any evidence demonstrating a prior refusal on the part of the Township to provide paid retiree health benefits to any police officer who earned a recognized PFRS service retirement, but who had less than twenty-five (25) years of actual service with the Township. Thus, on balance, the totality of the past practice evidence adduced clearly favors the joint PBA/SOA position.
>
> In summary, I find and conclude that both the plain language of the relevant contract provisions and the past practice or custom pertaining to retiree health benefits overwhelmingly supports the PBA's and SOA's claims that the Township violated the relevant contractual provisions by denying the Grievants fully paid retiree health benefits.

We have carefully canvassed this record in light of the parties' claims and, like the Appellate Division, have concluded that the arbitrator's interpretation of the Agreements was "reasonably debatable." *N.J. Tpk. Auth., supra,* 190 *N.J.* at 292, 920 *A.*2d 88.

## IX

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO, and HOENS—7.

*Opposed*—None.