**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4663-18T2

TOWNSHIP OF WAYNE,
a Municipal Corporation
of the State of New Jersey,

  Plaintiff-Appellant,

v.

WAYNE TOWNSHIP PRIMARY
LEVEL SUPERVISORS
ASSOCIATION,

  Defendant-Respondent.

_____

Argued telephonically March 18, 2020 —
Decided April 21, 2020

Before Judges Koblitz, Whipple and Mawla.

On appeal from the Superior Court of New Jersey,
Chancery Division, Passaic County, Docket No. C-
000026-19.

Lisa Michelle Scorsolini, Assistant Township Attorney,
argued the cause for appellant (Matthew Joseph
Giacobbe, Township Attorney, attorney; Matthew
Joseph Giacobbe, of counsel; Lisa Michelle Scorsolini,
on the briefs).

Arnold S. Cohen argued the cause for respondents (Oxfeld Cohen PC, attorneys; Arnold S. Cohen, of counsel and on the brief).

PER CURIAM

Plaintiff Township of Wayne appeals from a May 22, 2019 order confirming an arbitration award and dismissing its complaint against defendant Wayne Township Primary Level Supervisors Association. We affirm.

The dispute centered on the pay of plaintiff's chief sanitarian, Thomas Cantisano. The chief sanitarian position is a grade P10 on the parties' salary guide and he reports to the Township of Wayne Board of Health. Cantisano is licensed as a registered environmental health specialist.

After the prior collective negotiations agreement (CNA) expired, the parties entered into negotiations to implement a new CNA for the period from January 1, 2015 to December 31, 2018. Cantisano's salary was $87,881 at the time the prior CNA expired, the maximum salary for the P10 salary range. Cantisano served as defendant's vice president and a member of the bargaining team that negotiated the CNA and participated in preparing defendant's proposals for the 2015-2018 salary ranges. Following more than a year of negotiations, the parties entered into a Memorandum of Agreement (MOA)

outlining terms for the CNA. The Municipal Council adopted a resolution ratifying the MOA, and the parties entered into the CNA.

The MOA and the CNA contained a salary guide incorporating defendant's proposed adjustments to the P9 and P10 maximums, which resulted in a 7.46% salary increase for Cantisano. Plaintiff did not raise Cantisano's salary as required, defendant grieved the issue, and pursuant to the CNA the matter was submitted to binding arbitration.

The arbitrator sustained the grievance and found as follows:

> [T]he Supreme Court held that statutes and regulations applicable to employers in a particular bargaining unit are effectively incorporated by reference as terms of any collective agreement covering the unit. The statute on which [defendant] relies is N.J.S.A. 26:3-25.1 which states:
>
>> Every person holding a license issued under section 41 of P.L.1947, c.177 (C.26:1A-41), who is employed in a position for which this license is required by any board of health, municipality or group of municipalities shall receive the maximum salary in the person's range, within five years from the date of appointment to this position if the majority of the person's job performance evaluations are satisfactory.
>
> The [g]rievant is a person occupying a position requiring the designated license. He has held the license of a Registered Environmental Health Specialist

3

for more than five years in his current position with the Township Board of Health. He completed five years in the title of [c]hief [s]anitarian on November 1, 2011. It appears to the undersigned that the plain language of [N.J.S.A.] 26:3-25.1 does apply. The parties' course of dealing in administering its salary guides with respect to similarly situated licensed employees supports this conclusion.

The Notices of Payroll Changes in the record document substantial increases to four Township employees, including the [g]rievant, between 2000 and 2010. Each contains the statement that, "In accordance with N.J.S.A. 26:3-25.1 which requires Registered Environmental Health Specialists [or 'Sanitarians'] to be at maximum salary within [five] years of the date of the appointment." . . .

. . . [T]he [g]rievant was entitled to move to the new maximum when it became effective under the 2015-2018 CNA, i.e. on January 1, 2015. . . .

[Plaintiff]'s accusations that the [g]rievant acted in bad faith by proposing adjustments to the maximums of the P9 and P10 salary ranges are not borne out by the record evidence submitted about the parties' negotiations for their 2015-2018 agreement. It is true that the [g]rievant drafted [the] proposal . . . increasing the range maximums of P9 and P10 and then adding the [across-the-board] increase of 1.5%. The Township's response, however, was that it was willing to discuss the proposal and included the adjustments in its proposed salary guides which appear in the MOA, and the ratified bargaining agreement.

Plaintiff filed a complaint and order to show cause in the Chancery Division to vacate the arbitration award. The trial judge upheld the

determination. The judge found no basis to conclude Cantisano surreptitiously engineered a greater raise for himself for the same reasons the arbitrator expressed. The judge also pointed out the raise was not limited to Cantisano, the union as a whole ratified the increases, and defendant had no obligation to point out the applicability of N.J.S.A. 26:3-25.1 "or, that . . . Cantisano would be the only employee to presently personally benefit from the adjustment to the salary guide." The judge noted the attachment detailing the salary adjustments was plainly noticeable by plaintiff and

> became part of the [MOA] and, ultimately the signed CNA has the mathematical numbers themselves. In other words, the salary numbers, not percentages. And, very simple mathematical calculation would determine, or, verify the percentage changes that were set forth on the salary guide. In fact, it shows the various negotiated adjustments. But, one would have to perform that calculation.

The judge found the arbitrator had not misinterpreted the applicability of N.J.S.A. 26:3-25.1. He concluded as follows:

> Cantisano fits squarely within the statutory provision, holding a license as required by . . . [plaintiff]. Also, [plaintiff] has a constituted board of health, the documentation that was admitted into evidence during the arbitration on which the arbitrator relied shows that the Township [council] is the board of health. The members of the [council] . . . are the named board members for the board of health. And, there are filings

5

that have occurred based on the fact that the [council] is the board of health.

## I.

Pursuant to the New Jersey Arbitration Act, a court

shall vacate the award in any of the following cases:

a.    Where the award was procured by corruption, fraud or undue means;

b.    Where there was either evident partiality or corruption in the arbitrators, or any thereof;

c.    Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other prejudicial to the rights of any party;

d.    Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

[N.J.S.A. 2A:24-8.]

We "review[] the denial of a motion to vacate an arbitration award de novo." Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013) (citing Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010)).

On appeal, plaintiff argues the trial judge ignored the public interest by rewarding Cantisano's bad faith negotiation of a pay increase for himself, while failing to consider the budgetary and financial impact consequences of the

6

negotiated raise. Plaintiff asserts it never agreed to the 7.46% increase in Cantisano's salary, and the arbitrator and trial judge ignored the testimony adduced from both parties proving neither intended such a result. Plaintiff argues N.J.S.A. 26:3-25.1 applies to autonomous boards of health, which it is precluded from having under its mayor-council form of government.

A.

> "[A] court 'may vacate an award if it is contrary to existing law or public policy.'" Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 11 (2007) (quoting N.J. Tpk. Auth. v. Local 196, 190 N.J. 283, 294 (2007)). However, "[r]eflecting the narrowness of the public policy exception, that standard for vacation will be met only in rare circumstances." N.J. Tpk. Auth., 190 N.J. at 294. The arbitrator's award—"and not the conduct or contractual provision prompting the arbitration"—is the focus of that review. Public policy is ascertained by "reference to the laws and legal precedents and not from general considerations of supposed public interests." Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 434-35 (1996) (quoting W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 766 (1983)); Middletown Twp. PBA Local 124, 193 N.J. at 11. And, even when the award implicates a clear mandate of public policy, the deferential "reasonably debatable" standard still governs. Weiss, 143 N.J. at 443. Thus, "[i]f the correctness of the award, including its resolution of the public-policy question, is reasonably debatable, judicial intervention is unwarranted." Ibid.
>
> [Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 202-02 (2013).]

7

We are satisfied the public policy exception does not apply and does not require vacating the arbitration award. The arbitrator's analysis of the parties' record of negotiations leading up to the CNA, which included prior substantial increases in employees' salaries upon reaching the five-year period under N.J.S.A. 26:3-25.1, demonstrates the amount and nature of Cantisano's pay raise and its impact on plaintiff's budget was a known fact.

B.

The arbitrator did not ignore the testimony adduced on plaintiff's behalf intended to prove it did not agree to a 7.46% raise for Cantisano. Nor was the arbitration award the product of the arbitrator's failure to recognize bad faith.

Arbitration awards may be set aside when "procured by . . . undue means." N.J.S.A. 2A:24-8(a). "Undue means" includes an arbitrator's "mistake of fact or an inadvertent mistake of law that is either apparent on the face of the record or admitted to by the arbitrator." Hillsdale PBA Local 207 v. Borough of Hillsdale, 263 N.J. Super. 163, 181 (App. Div. 1993) (citing Held v. Comfort Bus Line, Inc., 136 N.J.L. 640, 641-42 (Sup. Ct. 1948)).

The record reveals no such mistake because both the MOA and the CNA memorialized the parties' express agreement to adjust the maximum salary range. This raised Cantisano's pay by 7.46%, by operation of the bargained-for

increase in the P10 salary grade, and the applicability of N.J.S.A. 26:3-25.1. As the trial judge noted, whether there was a mutual intent to particularly raise Cantisano's pay was not the issue because the arbitrator never made such a finding and only found it was the intent of the parties to adjust the maximum salary range, and the raise was not uniquely ascribed to Cantisano.

Further, the arbitrator did not err by finding no bad faith. As the trial judge stated, the increase in the maximum salary levels "never came off the table [because plaintiff] . . . didn't reject that. It was on the table, and, ultimately ended up being what was attached to the [MOA]." The mathematical calculations became part of the CNA, which as the judge noted, rebutted plaintiff's assertion "of any deceit, or, trickery on the part of Mr. Cantisano." Moreover, no law supports plaintiff's contention Cantisano was obligated to disclose the applicability of N.J.S.A. 26:3-25.1 to the negotiations.

C.

We reject plaintiff's argument that N.J.S.A. 26:3-25.1 did not apply to it because it operates with a department of health as opposed to an autonomous board of health.

N.J.S.A. 26:3-1 states:

> There shall be a board of health in every municipality in this state, which board shall consist of members

appointed or designated, or both, as provided by this chapter, except that in any municipality operating under laws establishing a form of government for such municipality under which the full powers of a local board of health cannot be exercised by a local board of health so appointed or designated, the respective functions of a local board of health shall be exercised by such boards, bodies, or officers as may exercise the same according to law.

The trial judge found plaintiff historically applied N.J.S.A. 26:3-25.1. He stated:

> The arbitrator indicated that the notice of payroll changes in the record documents substantial increases to four Township employees . . . inclu[d]ing the grievant, between 2000[] and[] 2010. Each of those payroll change notices contained the statement that, "In accordance with N.J.S.A. 26:3-25.1 which requires registered environmental health specialists, or, sanitarians to be at maximum salary within five years of the date of appointment." And . . . those were documents that were admitted into evidence at the time of the arbitration . . . and [the] arbitrator noted that three out of the four salary adjustments occurred after the [c]ourt decided [plaintiff's cited case law to support it was not subject to N.J.S.A. 26:3-25].

Based on the evidence admitted during arbitration, the judge concluded plaintiff had a constituted board of health, namely, the Township council itself.

Our de novo review likewise convinces us N.J.S.A. 26:3-25.1 applied to plaintiff as a matter of fact and law. Plaintiff's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

10

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

11