**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3707-24

PATERSON FIREFIGHTERS
ASSOCIATION,

     Plaintiff-Appellant,

v.

CITY OF PATERSON, a Municipal
Corporation of the State of New Jersey,

     Defendant-Respondent.

_____

> Argued February 4, 2026 – Decided March 3, 2026
>
> Before Judges Smith, Berdote Byrne, and Jablonski.
>
> On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-0438-25.
>
> Mark C. Rushfield (Shaw, Perelson, May & Lambert, LLP) argued the cause for appellant.
>
> Joseph P. Horan, II, argued the cause for respondent (PRB Attorneys at Law, LLC, attorneys; Peter P. Perla, Jr. and Joseph P. Horan, II, on the brief).

PER CURIAM

The Paterson Firefighters Association (PFA) appeals the trial court's order vacating an arbitration award. The award compelled the City of Paterson (City) to pay for the full costs of dental health insurance for PFA members. For the reasons which follow, we reverse and reinstate the arbitration award.

## I.

The PFA is a public sector labor union which represents firefighters employed by the City. The parties executed a Collective Negotiation Agreement (CNA) which covered the years 2010 to 2019.

## A.

We first outline key terms of the CNA.

Article III of the CNA outlined the grievance process for employer/employee dispute resolution and specified Public Employees Relations Commission arbitration as the exclusive means of resolving disputes left unresolved by the grievance process.

Article VII of the CNA defined health benefits eligibility for PFA members and other eligible persons. Section A, paragraph 4 stated, "[t]he City shall pay the full cost of the dental plan currently in effect for full-time employees and their eligible dependents."

2

Article XXX of the CNA stated that it was to remain in full force and effect until a new agreement was executed.

The CNA expired, without a new agreement in place, on June 30, 2019. On May 31, 2022, the parties signed a Memorandum of Agreement (MOA) which extended the terms of the CNA, while modifying some of them. Article VII of the CNA was one of the terms modified by the MOA.

B.

We next outline key terms of the MOA.

Article III of the MOA modified the dispute resolution terms in the CNA. We recite the relevant sections here:

E. IMPARTIAL AND BINDING ARBITRATION – Revise as follows:

1. Only the Association shall have the right to bring unresolved grievances to arbitration.

. . . .

4. The Arbitrator shall be bound by the provisions of this Contract and restricted to the application of the facts presented to him involved in the grievance.

5. The Arbitrator shall not have the authority to add to, modify, detract from, or alter in any way the provisions of this Contract or any amendment or supplement thereto.

3

This language kept the parties' formerly agreed-upon dispute resolution method, while restricting the scope of the arbitrator's authority to interpretation of the MOA language and application of the facts presented.

Article VII of the MOA tracked Article VII of the CNA, addressing PFA member health benefits. It stated in pertinent part:

> ARTICLE VII – Health Benefits
>
> *Replace this Article with the following:*
>
> The Employer agrees to provide coverage under the State Health Benefits Plan for all employees and their dependents as defined under the respective policies of insurance. The Employer agrees to provide major medical, dental, and prescription drug insurance to all full-time employees and their dependents.

Unlike the CNA, the MOA was silent on whether the City or the members would pay the full costs of dental insurance.

Article XXV of the MOA stated in relevant part:

> Revise as follows: All the rights, privileges and benefits which the employees covered by this Contract enjoyed prior to the effective date of this Contract are <u>retained by the employees except as those rights, privileges, and benefits specifically abridged or modified by this Contract.</u>
>
> [Emphasis added.]

4

On December 27, 2023, the City notified the PFA members of a change in their dental insurance provider, effective January 1, 2024. Three weeks later, after the City commenced payroll deductions to pay for the cost of members' dental coverage, the PFA filed a grievance, contending that the deductions violated Article XXV, the MOA's preservation of prior benefits clause.

## C.

The matter proceeded to arbitration on August 13, 2024. The parties agreed upon three issues to be addressed at arbitration: whether the grievance was substantively and/or procedurally arbitrable; did the City violate MOA Article XXV and other bargaining contract terms by shifting all dental plan costs to PFA members; and if the City did breach the terms, what was the remedy?

Before the arbitrator, the PFA argued that MOA Article XXV preserved certain terms of CNA Article VII, which required the City to pay the full costs of the PFA members' dental plan, specifically because the more recently executed MOA did not expressly terminate that obligation. Among other things, the City argued in opposition that the parties negotiated a shift to the PFA of the obligation to pay for members' dental costs in exchange for increased salary. The City contended this concession was driven in large part by the City's ongoing fiscal challenges.

5

The arbitrator issued the award on December 23, 2024, finding: (1) the grievance was substantively and procedurally arbitrable; (2) the City violated MOA Articles VII and XXV by failing to pay for or reimburse all member costs relating to the dental insurance plans provided by the City; and (3) Article VII of the MOA required the City to provide medical and dental insurance and authorize[d] employee contributions in accordance with Tier 4 of Chapter 78.[1]

Considering the record developed at arbitration along with the terms of the CNA and the MOA, the arbitrator found "absolutely no evidence establishing [the City's] intent to eliminate its provision of dental coverage without cost to unit members," and determined that "there [was] no bargaining history with respect to a negotiable item that would lead to a conclusion that the parties had reached a resolution authorizing employee deductions for dental coverage."

The arbitrator noted that deducting members' salaries would effectively add language to the modified Article VII, a change in terms upon which the parties did not agree. The arbitrator determined that MOA Articles VII and XXV must be read together and doing so required specific language be included for a party to the CNA to abridge or modify any existing practice. Because the

---

[1] New Jersey State Health Benefits Program (SHBP), N.J.S.A. 52:14-17.25 to -17.46.16.

A-3707-24

parties' prior practice required the City to cover the full cost of the dental plan, and the parties did not add new language to the MOA to affirmatively end that obligation, the City was bound by the MOA to honor the prior practice. The arbitrator concluded that the City could not shift the obligation to pay for the costs of the dental plan to the PFA members without a written agreement between the parties to do so.

The PFA moved to confirm the arbitrator's award and the City moved to vacate it. During argument before the trial court, the City proffered evidence from an unrelated interest arbitration (IA) hearing which occurred on February 12, 2025, after the arbitration in this matter had concluded. During the IA hearing, counsel for the PFA stated that union members understood they would have to give up certain benefits to secure increased salary through negotiations. The IA record provided on appeal reveals that counsel's statement did not reference any agreement by the PFA to give up the City's ongoing payment of the costs related to PFA members' dental plan.

The trial court considered it as evidence that the "pay for" obligation shift to the PFA was bargained for by the parties, and that the arbitrator exceeded their authority by finding otherwise. The court determined that the arbitrator went beyond the MOA's plain language and essentially rewrote its terms.

Finding the issue was not reasonably debatable, <u>Middletown Twp. PBA Loc. 124 v. Twp. of Middletown</u>, 193 N.J. 1, 11 (2007), the trial court granted the City's motion to vacate the award and remand to the arbitrator. The PFA appealed.

II.

We review decisions to affirm or vacate arbitration awards de novo. <u>Sanjuan v. Sch. Dist. of W. N.Y.</u>, 256 N.J. 369, 381 (2024). "[W]e owe no special deference to the trial court's interpretation of the law and the legal consequences that flow from the established facts." <u>Yarborough v. State Operated Sch. Dist. of Newark</u>, 455 N.J. Super. 136, 139 (App. Div. 2018) (quoting <u>Town of Kearny v. Brandt</u>, 214 N.J. 76, 92 (2013)). However, "in reviewing a motion to vacate an arbitration decision . . . we must be mindful of New Jersey's 'strong preference for judicial confirmation of arbitration awards.'" <u>Sanjuan</u>, 256 N.J. at 381 (quoting <u>Middletown Twp. PBA Loc. 124</u>, 193 N.J. at 10 (2007)). "An arbitrator's award is not to be cast aside lightly. It is subject to being vacated only when it has been shown that a statutory basis justifies that action." <u>Yarbough</u>, 455 N.J. Super. at 139 (quoting <u>Kearny PBA Loc. 21 v. Town of Kearny</u>, 81 N.J. 208, 221 (1979)).

### III.

The PFA argues the trial court erred in vacating the arbitration award because it failed to afford substantial deference to the arbitrator's interpretation of the MOA. The PFA also argues that the trial court improperly considered statements of its counsel, made outside after the conclusion of the arbitration, in reaching its decision. We consider the applicable jurisprudence.

### A.

When an arbitration award is brought before the trial court for confirmation, it must be granted unless it is vacated, modified, or corrected. N.J.S.A. 2A:24-7. Given the substantial deference afforded to an arbitrator's decision, vacatur is appropriate only in narrow circumstances. Sanjuan, 256 N.J. at 381. N.J.S.A. 2A:24-8 states the court shall vacate the award:

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;

d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

When an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

If none of the vacatur provisions apply, the court must determine whether the arbitrator's interpretation of the MOA is reasonably debatable. Middletown Twp. PBA Loc. 124, 193 N.J. at 11.

Under the reasonably debatable standard, a court "may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position." Borough of E. Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 201-02 (2013) (quoting Middletown Twp. PBA Loc. 124, 193 N.J. at 11). Put differently, if two or more interpretations of a labor agreement could be plausibly argued, the outcome is at least reasonably debatable.

[Borough of Carteret v. Firefighters Mut. Benevolent Ass'n, Loc. 67, 247 N.J. 202, 212 (2021) (citations reformatted).]

"Courts are not to 'second-guess' an arbitrator's interpretation." Borough of E. Rutherford, 213 N.J. at 202. If the arbitrator's interpretation is found to be reasonably debatable, the court must confirm the award. Middletown Twp. PBA Loc. 124, 193 N.J. at 11. However, if the interpretation expands to imposing

10

new terms or ignoring the agreement's clear language, the award may be vacated as not reasonably debatable.  Borough of Carteret, 247 N.J. at 212.

B.

Our thorough review of the record reveals no facts which would suggest that the arbitrator exceeded their contractually defined powers nor executed them imperfectly such that a definitive award was not made.  We easily dispense with the other statutory bases for vacatur under N.J.S.A. 2A:24-8, as there is nothing in the record to support them.  In our view, the dispositive issue is whether the arbitrator's interpretation of Article VII and Article XXV of the MOA, that the City agreed to maintain the prior practice of paying the full cost of the PFA members' dental plans absent specific MOA language to terminate that obligation, was reasonably debatable.

The terms of the CNA's Article VII are quite clear.  They call for the City to pay the "full cost" of the dental plan in effect for PFA members.  Article VII of the MOA expressly modified Article VII of the CNA by stating, "the Employer agrees to provide major medical, dental, and prescription drug insurance to all full-time employees and their dependents."  The MOA's Article VII next states, "[t]he City shall pay the full cost of hospital, medical and drug

11

prescription coverage for the individual employee, spouse, and dependent children."

The MOA is silent on the question of who will cover the cost of dental plans. Given the plain language of MOA Article XXV, the PFA argues that its members must retain "rights, privileges, and benefits" not abridged, in this case, the contractual right to dental insurance and related costs paid for, in full, by the City. The PFA's argument naturally leads to this follow-up question: Does the parties' failure to address who will cover the dental plans in the MOA count as an abridgement or modification?

Borough of East Rutherford is instructive. There, the Borough provided healthcare to its employees through the State Health Benefits Plan (SHBP). 213 N.J. at 193. During negotiations for a new collective bargaining agreement (CBA), the parties agreed that prior practice would stand and employees would pay a $5.00 co-pay for doctor's office visits. Ibid. Two years into the CBA, the State Health Benefits Commission increased the co-payment requirement to $10.00 per office visit. Ibid. The Borough passed along the increase to its employees. Ibid. The PBA filed a grievance disputing the increase, alleging a violation of the Preservation of Rights Article (Preservation Article) in the CBA. Ibid. The Preservation Article stated:

12

> The Borough agrees that all benefits, terms and conditions of employment relating to the status of Employees, which benefits, terms and conditions of employment are not specifically set forth in this Agreement, shall be maintained at not less than the highest standards in effect at the time of the commencement of the collective bargaining negotiations between the parties leading to the execution of this Agreement.
>
> [Id. at 195.]

The CBA contained a provision obligating the Borough to cover premium increases. Ibid. However, it was silent on who should bear the cost for co-payment increases. Ibid. The matter moved to arbitration, where, pursuant to the CBA, the arbitrator was prohibited from adding or subtracting from the agreement. Id. at 193, 195-96.

The PBA argued the Preservation Article locked it into a $5.00 co-payment and nothing more, and it was not responsible for any increases. Id. at 193. The Borough argued that had it intended to be responsible for co-payment increases as it was for premium increases, it would have explicitly said so in the CBA. Id. at 198. The arbitrator was unpersuaded by the Borough's argument, finding that the Preservation Article prevented the Borough from obligating the PBA to pay for increases that were not previously bargained for. Ibid. However, the arbitrator found it was beyond her authority to reimpose the $5.00 co-pay

amount, as the SHBP statutorily required otherwise, and that it was the parties' prerogative to renegotiate the provision. Id. at 198-99. What remained within her authority was instructing the Borough to reimburse the PBA for the increased co-payments for the duration of the contractual period. Id. at 199.

The trial court vacated the arbitrator's award, finding that the award exceeded the arbitrator's authority, violated public policy, was procured by undue means, and was not reasonably debatable. Ibid. The trial court viewed the award as reinstating the $5.00 co-pay and contravening SHBP statutes that the Borough was required to comply with. Id. at 199-200. The trial court found this exceeded the arbitrator's authority. Id. at 200.

On appeal, we reversed and reinstated the arbitration award in favor of the PBA, finding "that the award was not contrary to law or public policy as it did not undermine the Commission's decision to increase the co-payment, and the award was reasonably debatable." Ibid. We concluded that the Preservation Article protects the PBA members from changing circumstances and bearing the consequences of changes in law that adversely affect their interests, given they agreed to maintain prior practices. Ibid. We found the $5.00 co-pay a prior practice that must be maintained, absent specific language to the contrary. Ibid. The Supreme Court affirmed, concluding the arbitrator did not exceed their

14

authority in issuing reimbursement as a remedy and the arbitrator's interpretation of the Preservation Article was reasonably debatable. Id. at 205-06. Considering the substantial deference given to arbitrators, and the contractual agreement to rely on the arbitrator's interpretation and rationale, the Court declined to vacate the award. Id. at 202, 206.

The record before us closely mirrors the record in Borough of East Rutherford. Both cases have older agreements which provide employees with beneficial healthcare coverage terms. In both cases, the new agreement is silent on who pays for certain costs previously covered, increased co-payments in Borough of East Rutherford, and dental plan coverage here. Both cases have a preservation clause which entitled employees to the benefit of prior practices in the absence of abridgement or modification. In both cases, the arbitrators interpreted the contracts without exceeding their authority. The arbitrators interpreted the preservations clause to maintain employee benefits conferred in the prior agreement if modification or removal of these benefits was not addressed in the new agreement.

We adopt the Supreme Court's approach in East Rutherford, concluding that the substantial deference we give to arbitrators, and their interpretation of

15

the MOA warrants sustaining the arbitrator's award. There was no abridgement or modification.

As a final note, we easily conclude that the arbitrator's award is reasonably debatable on this record.

An arbitration award is reasonably debatable if two or more interpretations of a labor agreement could be plausibly argued. Borough of Carteret, 247 N.J. at 212. The City strenuously argued for an interpretation of the CNA and the MOA which posited that the absence of the dental plan "pay for" language in Article VII of the MOA meant that the City no longer was obligated to bear the full costs of the dental plan. In support of its interpretation, the City cited its well-documented financial challenges and the extrinsic statement[2] of PFA's counsel. However, this information was not before the arbitrator and not part of the arbitration record. As we have stated, the arbitrator's interpretation of the MOA and CNA was supported by the plain language of the documents. Therefore, the question is reasonably debatable,

---

[2] Because we reverse the trial court order based upon our Supreme Court's decision in Borough of East Rutherford, and because we conclude that the award is reasonably debatable, we do not reach the question of whether the trial court committed error by considering the statement of PFA's counsel made after close of the arbitration record.

and, under our well-settled law we are constrained to reverse the trial court's order for the reasons expressed here.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division