**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2418-19

COUNTY OF CUMBERLAND
and ROBERT AUSTINO in
his official capacity as Sheriff
of County of Cumberland,

     Plaintiffs-Respondents,

v.

POLICEMEN'S BENEVOLENT
ASSOCIATION LOCAL 299,

     Defendant-Appellant.

_____

Argued March 1, 2021 – Decided March 18, 2021

Before Judges Fasciale and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0779-19.

Donald C. Barbati argued the cause for appellant (Crivelli & Barbati, LLC, attorneys; Donald C. Barbati, on the brief).

John Gilman Carr, Cumberland County Counsel, argued the cause for respondents (Theodore E. Baker, Assistant County Counsel, on the brief).

PER CURIAM

Defendant Policemen's Benevolent Association Local 299 (PBA 299) appeals from a February 12, 2020 order granting plaintiff County of Cumberland's and Robert Austino's, in his official capacity as Cumberland County Sheriff (the County), order to show cause vacating an arbitration award rendered by Arbitrator Philip L. Maier (the arbitrator) sustaining a grievance filed by PBA 299 against the County.

On appeal, PBA 299 raises the following points for this court's consideration:

> POINT I
>
> THE [JUDGE] ACTED ARBITRARILY, CAPRICIOUSLY, AND UNREASONABLY IN GRANTING THE [COUNTY'S] ORDER TO SHOW CAUSE AND VACATING THE ARBITRATION AWARD. AS SUCH, THE [JUDGE'S ORDER] MUST BE REVERSED.
>
> POINT II
>
> IN ESSENCE, THE [JUDGE] CONCEDED [THE ARBITRATOR]'S ARBITRATION AWARD WAS "REASONABLE DEBATABLE." AS A RESULT, THE ARBITRATION AWARD SHOULD HAVE BEEN CONFIRMED IN ACCORDANCE WITH THE APPLICABLE LAW.

POINT III

THE [JUDGE'S] DECISION WAS IMPROPERLY AND PRIMARILY PREMISED UPON HYPOTHETICAL AND SPECULATIVE SCENARIOS.

POINT IV

[THE ARBITRATOR]'S DETERMINATION THAT THE COUNTY VIOLATED THE MEMORANDUM OF AGREEMENT [MOA] BETWEEN THE PARTIES WAS NOT DEFICIENT ON ITS FACE.

POINT V

[THE ARBITRATOR]'S DETERMINATION THAT THE COUNTY VIOLATED THE [MOA] WAS A "REASONABLY DEBATABLE" INTERPRETATION OF THE AGREEMENT AND WELL-SUPPORTED BY THE RECORD EVIDENCE. AS SUCH, THE [JUDGE] ERRONEOUSLY VACATED THE SAME.

Because the arbitrator did not exceed the scope of his authority, the award is not contrary to existing law or public policy, and his decision is a reasonably debatable interpretation of the MOA, we conclude that the judge's vacation of the arbitrator's award was arbitrary and capricious. We therefore reverse and reinstate the award.

The County and PBA 299 were parties to a collective bargaining agreement (CBA) effective from January 1, 2011 through December 31, 2015.

3

A-2418-19

Following the expiration of that agreement, the County and PBA 299 commenced negotiations for a new CBA for the period between January 1, 2016 through December 31, 2019. Due to a dispute as to interpretation, the parties never executed a formal successor agreement. The only document memorializing an agreement between the parties was the MOA dated September 27, 2017. Attached to the MOA was a document titled "PBA 299 Step Guide 2016-2020" (the Step Guide) which intended to demonstrate the salaries from the previous contract to run through the end of 2019, as well as demonstrate what the step structure would look like in 2019.[1] The County also provided a Cost Calculation Sheet to PBA 299 and the arbitrator, which demonstrated the actual salaries for the contract term for each individual PBA member. The document was not attached or incorporated into the MOA.

Following the execution of the MOA, a dispute between the County and PBA 299 arose, resulting in PBA 299 filing a grievance in January 2019. The grievance emanated from a dispute regarding the interpretation of the MOA as

---

[1] The County notes that there was a notation included by counsel as to the Step Guide as follows: "Paragraph [Four] from Step Guide in 1/1/11 to 12/31/15 contract shall be incorporated herein." Paragraph Four from the Step Guide states as follows: "[m]andatory [s]tep [m]ovement – [t]here shall be automatic salary step movement surviving the expiration of the contract (each employee shall continue to move one step per year on the [s]alary [s]cale below until he or she reaches the maximum step)."

it relates to step progression of the officer's salaries.[2] Specifically, the County was advancing PBA 299 members diagonally on the salary guide, but to the same step they were previously at on the guide.[3]

The crux of the dispute between the parties was whether the MOA provided for additional step progression for existing officers based upon the increase of salaries for new hires. PBA 299 maintained, and the arbitrator agreed, that officers hired between 2017 and 2019 should be advanced a step so that no officers who were hired after an earlier hire are paid less. The County maintained that there should only be single step progression, that PBA 299's stance is wholly unsupported by the parties' negotiations and the MOA, and that PBA 299's purported outcome would not be feasible from a financial

---

[2] The salary step progression is ambiguous. The old step guide in effect at the end of the old CBA in December 2015 contained eleven total steps. The new guide effective 2017 contained twenty-one steps. There is no discussion in the MOA about how officers would progress from an eleven-step guide to a twenty-one-step guide. The guide for 2018 and 2019 is also staggered, and it is evident that new hires in 2019 would start at step one, which is effectively step three for officers hired in 2017.

[3] PBA 299 grieved that officers hired in 2017 and 2018 were not compensated properly because they were being paid less than new hires in 2019 and argued that officers hired in 2017 and 2018 would need to progress through twenty-three or twenty-four steps instead of twenty-one like new hires. The County responded that it was raising the starting salary to help attract and retain new recruits.

A-2418-19

perspective. After it was determined that a response was unable to be rendered under the applicable grievance procedure, the grievance was denied. Thereafter, PBA 299 filed a request for submission to a panel of arbitrators with the Public Employment Relations Commission (PERC), alleging the County's actions in failing to properly advance and compensate officers violated the express terms of the MOA. In August 2019, a grievance arbitration hearing was conducted. In a written decision, the arbitrator sustained the grievance against the County and awarded relief accordingly.

The arbitrator issued a decision and award in this matter on October 24, 2019. The parties agreed to all issues submitted for purposes of being considered. The arbitrator articulated the following specific issues would be addressed:

> (1) Was there a meeting of the minds regarding Article [Twenty-Four] of the collective negotiations agreement?
>
> (2) Did the [County] violate Article [Twenty-Four] of the collective negotiations agreement and/or [MOA] when it failed to advance members on the negotiated step guide; thereby causing certain members to be compensated improperly in that they were paid at the same rate as recruits and/or officers with less experience with the Department?
>
> (3) If the grievance is sustained, what shall be the remedy?

A-2418-19

The arbitrator addressed, discussed, and analyzed the parties' specific arguments in support of their respective positions. As to whether the County violated the MOA by not correctly advancing members on the negotiated salary guide, the arbitrator found merit to PBA 299's argument and stated

> the officers already employed did not progress from the lowest to the highest step since they are remaining at the lowest step level, which correlates with the lowest salary. It is also the step at which new hires are placed. By remaining at the lowest step level which is associated with the lowest salary, the County is not advancing officers from the lowest to the highest step
>
> . . . .
>
> I find the PBA's arguments in its brief in this respect to be persuasive. The County's argument if accepted would lead to the conclusion an officer would need to be on step for [Twenty-Four] years to reach the top step. There is no evidence that the parties discussed this or that it was intended by the parties to change Article [Twenty-Four] in this regard. The County's position would also lead to the conclusion that while it would take an officer hired in 2017 twenty-four . . . years of steps to reach top step, it would take an officer hired in 2019 only twenty-two . . . years or steps to achieve the same result . . . .
>
> . . . .
>
> I also do not find that both parties intended to enter into an agreement in which officers already employed would be on the same salary step as those newly hired. I credit [PBA 299 President Joseph] Dragotta's

A-2418-19

testimony that the parties never discussed that a new hire would be placed on the same salary rate as an officer with more tenure. While [County CFO Gerry] Seneski and [County Human Resources Director Craig] Atkinson testified that they explained how the step system would work, Seneski also testified that it was never explicitly stated that new hires would be at the same salary rate as officers already on the job.

As to the County's arguments and the issue of whether there was a meeting of the minds regarding Article Twenty-Four, the arbitrator explained

The Step Guide used during the negotiations does not establish the County's position. It lists steps on the left side of the guide beginning with step [one]. There is no step [one] salary indicated for 2018 and no step [one] or [two] salary indicated for 2019. Seneski testified that there [were] no step levels indicated for 2018 and 2019 since the point was to raise the recruit rate. This, however, does not mean that [PBA 299] agreed, or that it is clear, that that was the level at which the officers already on the schedule would also be placed. This would be contrary to the manner in which officers already employed had advanced under the prior contracts . . . .

The County presented as an issue whether there was a meeting of the minds regarding Article [Twenty-Four] of the agreement . . . . The parties' intended to enter into an agreement consisting, in part, of the [S]alary [S]chedule and the [W]age [G]uide. [The parties] have different interpretations of how the agreement relating to only part of the [S]alary [S]chedule and [W]age [G]uide should operate. The fact that there is a disagreement about the meaning of one of the terms of the agreement . . . does not mean that a binding agreement does not exist.

The arbitrator ultimately sustained PBA 299's grievance. The arbitrator awarded the following:

> (1) The parties executed a [MOA] incorporating Article [Twenty-Four] which is subject to the parties' grievance dispute resolution system and I find that there was a meeting of the minds to do so;
>
> (2) The [County] violated Article [Twenty-Four] of the collective negotiations agreement and/or [MOA] when it failed to advance members on the negotiated [S]tep [G]uide[.]
>
> (3) As a remedy, the affected members should be retroactively placed on the step guide in accordance with the advancement required by Article [Twenty-Four] and shall be made whole for any and all losses suffered as a result of the County's violation of Article [Twenty-Four].

Thereafter, on December 19, 2019, the County filed a lawsuit seeking to set aside the arbitration award. The judge heard oral argument, rendered a written decision detailing his reasoning, and entered the order under review vacating the arbitration award. First, the judge highlighted the "stark differences as to how the respective parties interpret the [S]tep [G]uide" and noted that there was a difference "of over [eleven] percent" in what each party believed the officers should be paid. The judge stated that "[i]f the decision is left to stand, grievances are coming" and the impact "could devastate the County budget as

[PBA 299's] demands would clearly violate the [two percent] cap both sides agree was in effect at the time of these negotiations." Second, the judge stated that the arbitrator ignored a substantial piece of evidence presented by the County—the Contract Cost Calculation Sheet (the Cost Calculation Sheet) which set forth in detail what each officer would make through the contract term—and instead gave weight to Article Twenty-Four, "an unsigned unadopted document" with "no legal meaning," unlike the Cost Calculation Sheet. Third, the trial judge found that "in application, the arbitrator['s] award violates N.J.S.A. 2A:24-8(d) as its implementation would violation the [two percent] cap." Having ruled that the arbitrator's decision needed to be vacated, the judge directed the parties to renegotiate the disputed terms.

I.

Our review of a judge's decision to vacate a labor arbitration award is guided by certain well-established principles. Because the decision to vacate an arbitration award is a matter of law, we review a trial judge's decision de novo. See Yarborough v. State Operated Sch. Dist. of City of Newark, 455 N.J. Super. 136, 139 (App. Div. 2018) (citing Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013)). "The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J.

Mfrs. Ins. Group, 220 N.J. 544, 556 (2015) (citing Cty. Coll. of Morris Staff v. Cty. Coll. of Morris Staff Ass'n, 100 N.J. 383, 390 (1985)). To ensure the finality and the expeditious and inexpensive nature of binding arbitration, there is "a strong preference for judicial confirmation of arbitration awards," particularly in public-sector labor disputes. Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013) (quoting Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 10 (2007)).

"Judicial review of an arbitration award is very limited[.]" Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010). "An arbitrator's award is not be cast aside lightly. It is subject to being vacated only when it has been shown that a statutory basis justifies that action." Kearny PBA Local No. 21 v. Town of Kearny, 81 N.J. 208, 221 (1979). "In the public sector, an arbitrator's award will be confirmed 'so long as the award is reasonably debatable.'" Linden Bd. of Educ., 202 N.J. at 276 (quoting Middletown Twp. PBA Local 124, 193 N.J. at 11). An award is "reasonably debatable" if it is "justifiable" or "fully supportable in the record." Policemen's Benevolent Ass'n, 205 N.J. at 431 (quoting Kearny PBA Local No. 21, 81 N.J. at 223-24). Under this standard, we "may not substitute [our] own judgment for that of the arbitrator, regardless of [our] view of the correctness of the arbitrator's

interpretation." N.J. Transit Bus Ops., Inc. v. Amalgamated Transit Union, 187 N.J. 546, 554 (2006) (citing State v. Int'l Fed'n of Prof'l & Technical Eng'rs, Local 195, 169 N.J. 505, 514 (2001)).

N.J.S.A. 2A:24-8 sets forth the grounds for vacating an arbitration award. Pertinent to this appeal, a judge may vacate an arbitration award "where the arbitrator . . . exceeded or so imperfectly executed [his or her] powers that a mutual, final and definite award upon the subject matter submitted was not made." N.J.S.A. 2A:24-8(d). That legislatively granted authority to vacate awards serves as a check on whether the arbitration award "draw[s] its essence from the bargaining agreement." Cty. College of Morris, 100 N.J. at 392. It is the party seeking to vacate an arbitration award that "bears the burden of demonstrating 'fraud, corruption, or similar wrongdoing on the part of the arbitrator[].'" Minkowitz, 433 N.J. Super. at 136 (alteration in original) (quoting Tretina Printing, Inc. v. Fitzpatrick & Assocs., 135 N.J. 349, 357 (1994)).

An arbitrator exceeds his or her authority where they ignore "the clear and unambiguous language of the agreement[.]" City Ass'n of Supervisors & Adm'rs v. State Operated Sch. Dist. of City of Newark, 311 N.J. Super. 300, 312 (App. Div. 1998). "Thus, an arbitrator may not disregard the terms of the parties'

agreement, nor may he [or she] rewrite the contract for the parties." Cty. Coll. of Morris, 100 N.J. at 391 (citations omitted).

"If contract terms are unspecific or vague, extrinsic evidence may be used to shed light on the mutual understanding of the parties." Hall v. Bd. of Educ. of Twp. of Jefferson, 125 N.J. 299, 305 (1991). Although the arbitrator is not free to contradict the express language of a contract, "an arbitrator may 'weav[e] together' all those provisions that bear on the relevant question in coming to a final conclusion." Policemen's Benevolent Ass'n, 205 N.J. at 430 (alteration in original) (quoting N.J. Transit Bus Operations, 187 N.J. at 555). "[S]o long as the contract, as a whole, supports the arbitrator's interpretation, the award will be upheld." Ibid.

Additionally, when reviewing an arbitrator's interpretation of a public-sector contract, "a [judge] 'may vacate an award if it is contrary to existing law or public policy.'" Middletown Twp. PBA Local 124, 193 N.J. at 11 (quoting N.J. Tpk. Auth. v. Local 196, I.F.P.T.E., 190 N.J. 283, 294 (2007)). Heightened scrutiny is required "when an arbitration award implicates 'a clear mandate of public policy[.]'" N.J. Tpk. Auth., 190 N.J. at 294 (quoting Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 443 (1996)). However, "[r]eflecting the narrowness of the public policy exception, that standard for vacation will be met

only in rare circumstances." Id. at 294 (internal quotation marks omitted) (quoting Tretina Printing, Inc. 135 N.J. at 364). The arbitrator's award—"and not the conduct or contractual provision prompting the arbitration"—is the focus of that review. Id. at 296. Public policy is ascertained by "reference to the laws and legal precedents and not from general considerations of supposed public interests." Weiss, 143 N.J. at 434-35 (quoting W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers, 461 U.S. 757, 766 (1983)); Middletown Twp. PBA Local 124, 193 N.J. at 11. And, even when the award implicates a clear mandate of public policy, the deferential "reasonably debatable" standard still governs. Weiss, 143 N.J. at 443. Thus, "[i]f the correctness of the award, including its resolution of the public-policy question, is reasonably debatable, judicial intervention is unwarranted." Ibid. As the Court explained in Weiss,

> [a]ssuming that the arbitrator's award accurately has identified, defined, and attempted to vindicate the pertinent public policy, [judges] should not disturb the award merely because of disagreements with arbitral fact findings or because the arbitrator's application of the public-policy principles to the underlying facts is imperfect.
>
> [Ibid.]

II.

We first reject the County's contention that the judge properly vacated the award because the arbitrator's finding that Article Twenty-Four of the draft CBA was incorporated into the MOA was contrary to the authority vested in him and fatal to the viability of the award.

N.J.S.A. 2A:24-8(d) states that a judge shall vacate an award "where the arbitrator[] exceeded or so imperfectly executed [his or her] powers that a mutual, final and definite award upon the subject matter was not made." "[L]imits [to the arbitrator's authority] are defined by statute, N.J.S.A. 2A:24-8, and by the [MOA] between the parties" as well as "by the questions framed by the parties in a particular dispute." Local No 153, Office of Prof'l Employees Int'l Union v. Tr. Co. of N.J., 105 N.J. 442, 449 (1987). Indeed, an arbitrator's award "should be consonant with the matter submitted. Otherwise, the determination is contrary to the authority vested in him [or her]." Grover v. Universal Underwriters Ins. Co., 80 N.J. 221, 231 (1979).

In the underlying arbitration, the issue to be decided was whether the County was properly advancing PBA members on the negotiated salary step guide in accordance with the MOA. The dispute between the parties pertained to the interpretation and, more specifically, the step progression provided for

PBA 299 members, in the MOA executed by the parties. Clearly, the arbitrator addressed the seminal issue and the questions framed by the parties based on the evidence presented.

The arbitrator considered and rejected the argument regarding Article Twenty-Four, raised again by the County on appeal:

> The County presented as an issue whether there was a meeting of the minds regarding Article [Twenty-Four] of the agreement and asserts that the doctrines of unilateral mistake or mutual mistake are applicable to this matter. This issue is more properly presented as a defense or theory as to whether there is a contract violation or even whether a contract exists. The parties have a grievance dispute resolution system in the event a disagreement arises under the contract and this matter was submitted for my determination. In this matter there is no mistake as to the purpose of the agreement. The County agreed with the [PBA 299] to compensate officers pursuant to the terms of the agreement . . . . The parties' intended to enter into an agreement consisting, in part, of the [S]alary [S]chedule and the [W]age [G]uide. They have different interpretations of how the agreement relating to only part of the [S]alary [S]chedule and [W]age [G]uide should operate. The fact that there is a disagreement about the meaning [of] one of the terms of the agreement . . . does not mean that a binding agreement does not exist . . . . I find that . . . [t]he parties executed a [MOA] incorporating Article [Twenty-Four] which is subject to the parties' grievance dispute resolution system and I find that there was a meeting of the minds to do so[.]

16

In rendering his final determination, the arbitrator found that the County violated Article 24 and/or the MOA. PBA 299 emphasizes this semantic choice. The arbitrator stated the following in various places of his award:

> Did the Cumberland County Sheriff's office and/or the County of Cumberland violate Article [Twenty-Four] of the collective negotiations agreement and/or [MOA] . . . ?
>
> For the reasons set forth below, I find that the County violated Article [Twenty-Four] of the parties' CBA and[/]or MOA by not advancing members on the step guide as argued by [PBA 299] and sustain the grievance.
>
> The Cumberland County Sheriff's Office and/or the County of Cumberland violated Article [Twenty-Four] of the collective negotiations agreement and/or [MOA] when it failed to advance members on the negotiated step guide as argued by [PBA 299] and as set forth in this Opinion and Award . . . .

The judge, however, concluded that the arbitrator's reliance on Article Twenty-Four of the draft collective negotiations meant he exceeded or imperfectly executed his authority. As to this issue, the judge stated:

> The first is the arbitrator concluded that Article [Twenty-Four] of the unratified, unexecuted draft of the CBA cover[ing] the period from 2016 through 2019 controls the issue in dispute, and was violated by the County in this case. Clearly, this cannot be the case. Article [Twenty-Four] has no legal authority in this matter. It is a provision in the contract not signed by either side. It cannot be controlling, and it cannot be

17

violated. Any reliance on Article [Twenty-Four] is clearly misplaced . . . Any reliance on Article [Twenty-Four] as a basis for a decision is a violation of subsection (d).

Having determined that the arbitrator addressed the seminal issue, the question posed to this court is whether his allegedly improper reliance on Article Twenty-Four meant that a "mutual, final and definite award upon the subject matter was not made." We conclude that one was.

Article Twenty-Four is not referenced in the MOA and only existed as part of the draft CBA, which the parties never formally executed. It refers to a salary schedule and simply suggests that officers will generally progress along the steps. While reliance on this unsigned document at this juncture many have been mistaken, the parties agreed to the various issues to be resolved by the arbitrator, one of which was whether there was a meeting of the minds as to Article Twenty-Four for purposes of the grievance arbitration. The arbitrator found that there was a meeting of the minds and rejected the argument the County now makes again on appeal. Article Twenty-Four only generally indicated that PBA 299 members move progressively from the lowest step to the highest step of the salary guide at a rate of one step per year and did not bear on whether the County was, in fact, providing a step to PBA 299 members (which was the issue grieved by PBA 299). Further, the arbitrator concluded that the

18

County violated both Article Twenty-Four and the MOA by not progressing officers along the steps based on the cumulative evidence presented. Therefore, the arbitrator's reliance on Article Twenty-Four does not provide grounds under N.J.S.A. 2A:24-8(d) for the judge to vacate the award.

### III.

The County also argues that during the time that negotiations were ongoing when the MOA was signed, contracts for law enforcement officers were subject to the restrictions of the public interest cap law as authorized in N.J.S.A. 40A:4-45.1(a) and applied pursuant to N.J.S.A 34:13A-16, -16.9. The County therefore argues that the arbitrator had no authority to award such a contract and failed to acknowledge the applicability of or comply with the cap guidelines here.

The Legislature enacted N.J.S.A. 34:13A-16.7(b), commonly known as the "two percent salary cap," in 2010 and later extended its life to 2017. At the time of the arbitration of this matter, the Act prohibited an interest arbitrator from rendering a salary award

> which, on an annual basis, increases base salary items by more than [two] percent of the aggregate amount expended by the public employer on base salary items for the members of the affected employee organization in the twelve months immediately preceding the expiration of the collective negotiation agreement

subject to arbitration; provided, however, the parties may agree, or the arbitrator may decide, to distribute the aggregate monetary value of the award over the term of the collective negotiation agreement in unequal annual percentages.

[N.J.S.A. 34:13A-16.7(b) (2010).]

"This cap, limited to interest arbitration, is the Legislature's link between the Act and the two percent tax levy cap or efforts at controlling the size of municipal budgets." In re County of Atlantic, 445 N.J. Super. 1, 14 (App. Div. 2016) (emphasis added). Under N.J.S.A. 34:13A-16(g)(6), an element, among many, arbitrators must take into account in resolving salary negotiations is the effect of an award on the employers' budget.

On the issue of public policy, the judge stated:

If this decision is left to stand, these grievances are coming. The impact of this could devastate the County budget as [PBA 299's] demands would clearly violate the [two percent] cap both sides agree was in effect at the time of these negotiations.

The judge's assertion that PBA 299's demands would violate the cap lacks a proper legal basis. The two percent cap is only applicable if the parties avail themselves of interest arbitration. In re County of Atlantic, 445 N.J. Super. at 14. The restrictions of the two percent cap are not applicable when parties voluntarily reach an agreement on a MOA. The interest arbitration statute's

legislative history, L. 2010, c. 105, explicitly states that the Legislature did not intend to place a cap on negotiated agreements, like the one at issue here. See Assembly Law & Public Safety Comm. Statement to Assembly Comm. Substitute for A. 3393 (Dec. 9, 2010) ("[A]greements arrived at through independent negotiation between the parties, and agreements reached with the assistance of a mediator or factfinder are not subject to the contractual cap."). The parties do not contest that this matter was submitted for grievance arbitration, not interest arbitration. The two percent cap is therefore inapplicable here.

The judge's determination is also factually incorrect. Regarding the County's two percent cap argument, the arbitrator specifically stated that the restrictions of the cap did not support the County's interpretation that officers hired in previous years would be making the same amount as recruits. The arbitrator also found that such a result would be contrary to how officers previously advanced under prior CBAs and undermines the parties' agreement to have PBA 299 members advance one step each year. Moreover, the parties did expressly agree —and do not dispute in their merits briefs—that they had agreed to exceed the cap. The County maintains that it "was willing to pay slightly in excess of the [two percent] cap" but the arbitrator's award would have

21

"made the contractual award grossly in excess of that." Such willingness to exceed the cap in arbitration cuts against the County's argument that the arbitrator's authority was constrained by it.

The County further contests that "even though this matter proceeded as a grievance arbitration, the [judge] was well within [his] right . . . to consider the [two percent] cap restriction because tax payer funding is called upon to pay for law enforcement salaries." PBA 299 contends that judge erred when he vacated the arbitration award "largely premised upon hypothetical and/or speculative scenarios if the arbitration award were to be confirmed."

Although it is true that judicial scrutiny in public interest arbitration is more stringent that in general arbitration because public funds are at stake, Division 540, Amalgamated Transit Union AFL-CIO v. Mercer Cnty. Improvement Auth., 76 N.J. 245, 253 (1978), public policy considerations cannot be ascertained "from general considerations of supposed public interests," Weiss, 143 N.J. at 434-35 (quoting W.R. Grace & Co., 461 U.S. at 766). Moreover, while N.J.S.A. 34:13A-16(g)(6), requires that arbitrators consider the effect of an award on the employers' budget, the judge's determination that the two-step movement would "devastate the [C]ounty budget" is speculative and unsupported by evidence in the record. Thus, while

22

the judge could consider the fiscal impact of the award, his conclusions were improper.

IV.

Finally, we conclude that the award was a "reasonably debatable" interpretation of the MOA. An award is "reasonably debatable" if it is "justifiable" or "fully supportable in the record." Policemen's Benevolent Ass'n, 205 N.J. at 431 (quoting Kearny PBA Local No. 21, 81 N.J. at 223-24). "Under the reasonably debatable standard, a court reviewing [a public-sector] arbitration award may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position." Borough of E. Rutherford, 213 N.J. at 201-02 (alteration in original) (citations and internal quotation marks omitted).

Here, the arbitrator thoroughly considered the positions of the parties and the arguments raised and his award sets forth detailed findings and reasoning for his decision to sustain the grievance. It is both justifiable and well-supported by the record. The arbitrator properly determined based on the evidence presented and the testimony given that it was not PBA 299's expectation, nor the intention of the MOA, that PBA members would be on the same step and compensated at the same rate as officers who were hired later. Rather, it was

23

that PBA members would be advanced to the next step, not diagonally with a slight pay increase. The arbitrator's award properly provided PBA 299 with one step advancement in years 2017, 2018, and 2019 so that certain PBA 299 members no longer would reach the top step, or "off guide" salary later than those officers hired after them. The arbitrator's determination that the step advancement would proceed in this manner is consistent with the parties' intentions, prior practices of how the County typically advances PBA 299 members, and effectively maintains the advancement and payment hierarchy based on seniority. As such, and for the reasons set forth above, there exists no reason for us to second guess the arbitrator's determination or substitute our own judgment.

Reversed; the arbitrator's award is reinstated.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION